SANFORD A. CHAPMAN *vs.* CHARLES H. DECROW.

Knox.    Opinion December 20, 1899.

*Dog.   Found Worrying.   License.   Nuisance.   R. S., c. 30, § 2;   Stat. 1893, c. 287.*

By the common law, a dog is property, for an injury to which an action will lie.

An unlicensed dog may not be killed as a public nuisance by a private person who does not suffer damages therefrom peculiar to himself and distinct from the injury to the public.

The statute, R. S., c. 30, § 2, which provides for killing unlicensed dogs by a constable only, under a warrant, impliedly forbids killing by any other person.

Revised Statutes, c. 30, § 2, provides that "any person may lawfully kill a dog . . . . found worrying, wounding or killing any domestic animal, outside of the inclosure or immediate care of his owner." *Held;* under this statute, it is not enough that the dog may have worried or killed a domestic animal before, nor that there is a belief or apprehension that he intends

to do so, to justify the killing; but he must be in the act—the worrying and the shooting must be substantially at the same time.

*State* v. *Harriman*, 75 Maine, 562, distinguished.

ON EXCEPTIONS BY DEFENDANT.

This was an action of trespass to recover the value of a dog killed by the defendant and belonging to the plaintiff. The jury found for the plaintiff.

The defendant, in justification for killing the dog, claimed that the dog was trespassing on his premises and was then, or had been immediately before the shooting, engaged with two other dogs in chasing and worrying his domesticated animals, viz:—tame rabbits, and that the dog was, at the time, outside of the enclosure or immediate care of his owner.

The dog was killed on the 24th day of April, 1897; and, as appeared, had not been registered nor licensed for that year as provided by law, although he had been licensed for the preceding year and was then wearing a collar.

The plaintiff was allowed to state what was the fair market value of the dog at the time, which was objected to by the defendant, on the ground that, unless the plaintiff could show that the dog was licensed and that he had a right to keep him according to law, he had no market value.

The Court.—"I don't think that element comes in here. I shall rule against that."

When the plaintiff rested his case, counsel for defendant moved a nonsuit on the ground that an unlicensed dog outside of the owner's premises, cannot have a property value, citing chap. 287 of the public laws of 1893.

The Court.—"For the purposes of this trial I make the ruling that a dog is property." To this ruling the defendant took an exception.

The presiding justice, in part, instructed the jury as follows:— "The defense takes the position that in this case there was no property in this dog to his owner, that he was a nuisance; that any person could kill and slay him because he was not licensed and

registered according to the statute of this state. I rule against that proposition."

Upon the question of justification, the defendant requested the presiding judge to instruct the jury "that if the jury find that at the time of the shooting of the dog, he had killed or wounded the defendant's domesticated animals on the defendant's premises and was again there apparently for the purpose of destroying others, the defendant would not be liable for killing the dog; but would be justified in so doing, even though the dog was not, at the time, in the act of destroying or worrying the animals aforesaid," which requested instruction was not given except as it may appear in the charge. In respect to such justification the presiding judge instructed the jury as follows :

"It is when he is found in the act. It is not for punishment to the dog; therefore it is not for an act which he has heretofore done. If he had killed ever so many rabbits for the defendant, hours before—on the day before—he had no right to touch the dog."— "It is when he is found in the act."—"Bear in mind it is while the dog is found in the act. What is the act? Well, my estimation is, the worrying and the shooting must be substantially at the same time." To which instructions and refusal to instruct, the defendant had exceptions.

Charge to the jury:—

"Gentlemen of the jury:— This action is to recover damages for the loss of a dog by shooting. That the dog was shot, no question is made. I don't know as any question is really made that the defendant shot the dog, or ordered him to be shot, so as to be responsible therefor, if there is any responsibility on any one. If his hired man, or agent, shot the dog by his direction or order, or by his assent, then he would be liable, and so would the agent be. If it be proved or admitted that the responsibility for shooting the dog attaches to the defendant, and that the dog was at the time even on the premises of the defendant, but doing no injury, nor worrying his domesticated rabbits, he would be liable to pay the value of the dog, in this case, unless there be some other justification for it.

"Now, in the first place, the defendant takes the position that there is no property value in a domesticated dog. I do not concur in that proposition. I rule against it. A dog has value in this state, by our laws, in most respects, the same as any other property, and no man has a right to kill another's dog, unless the dog is violating a statutory provision. The defense takes the position that in this case there was no property in this dog to his owner, that he was a nuisance; that any person could kill and slay him because he was not licensed and registered according to the statute in this state. I rule against that proposition. I think the question of license or no license, registration or no registration, is between the owner of the dog and the state—a question of finance, affecting only the owner of the dog and the state—and the want of registration does not authorize the killing of the dog.

"I make these rulings as matters of law. If I am wrong on either of them, the case can be taken to and settled in the law court above; and if I am in error, that error can be rectified and the case sent back to be tried on the true, admissible grounds, if I have misstated them.

"But the defense does not stop here. There is a very severe statute towards the owner of dogs doing mischief, which embodies one expression or description of the common law of the state which reads, as I will read to you, and which has been stated to you in different forms: 'Towns may pass by-laws to regulate the going at large of dogs therein.' Towns may regulate the going at large of dogs by by-laws. There are none here that have been called to our attention.

'When a dog does damage to a person or his property, his owner or keeper, and also the parent, guardian, master, or mistress of any minor or servant who owns or keeps such dog, forfeits to the person injured double the amount of the damage done, to be recovered in an action of trespass.'

"You see there is a remedy against the owner of a dog for any damage done by the dog to a person or his property, and the remedy is severe. But that is not this case. It is not a case between the owner of property and the owner of a dog for injury done by

the dog; but by the owner of a dog for the unjustifiable shooting of his dog.

'Any person may lawfully kill a dog that suddenly assaults him or another person when peaceably walking or riding'—and here comes a portion applicable here—'May lawfully kill a dog who is found worrying, wounding, or killing any domestic animal outside of the inclosure or immediate care of his owner.'

"So the defense here sets up its justification on this statute, namely, as they contend, that this dog was found, at the time he was killed, worrying the domesticated rabbits of the defendant, or of the person who killed the dog, or person whose agent or servant killed him. Now, if that be made out, it is a perfect justification by this defendant—if the fact is ascertained by the jury that when he killed the dog, the dog was found worrying his domesticated rabbits. It is not alleged the dog killed any at that time, but that he was endeavoring to kill them; that he was worrying them; and, as severe as it may seem, an owner of domesticated rabbits catching the dog—'finding him' (to use the words of the statute) in the act of worrying the rabbits himself—as the circumstances would be here, if at all — had a perfect right to shoot him on the spot. That is the defense on the facts in this case—the other defense being upon legal propositions, more strictly.

"It is when the dog is found in the act. It is not for punishment to the dog. Therefore it is not for an act which he has heretofore done. If he had killed ever so many rabbits of the defendant hours before, days before, on the day before, the defendant had no right to touch the dog. His remedy would be in another form for the damages done by the dog. The object of the statute is for the prevention of injury to property, and he has a right to shoot the dog when found worrying his domestic animals so as to prevent injury and killing of these animals.

"Now, gentlemen, it may be a very nice question to know when the worrying of animals begins and when it ends—to know when a dog had worried them and had ceased to worry them, or whether he continues to worry them,—and I think it is a question of fact for the jury to decide; but I can give a general illustration, a general

statement or proposition which may touch somewhere nearly the different contentions of the parties,—the contention of the plaintiff and the contention of the defendant. Bear in mind it is while the dog is found in the act. What is the act? Well my estimation is, the worrying and shooting must be at, substantially, the same time; because, as I have already intimated, for past worrying there is no right of shooting. For present worrying there is a right, and I can conceive of cases where it would be close and difficult to decide. But the facts in this case are not for me but for you to determine upon the evidence.

"Now, if the dog had been worrying the defendant's rabbits, but had ceased his chase, and had retreated from the immediate premises where the worrying was done, and had gone so far off on his retreat that it should be reasonably apparent to the owner of the rabbits that he had ceased his chase and gone away, that the work had been done, and was not to be continued—I think he had no justification for shooting the dog. As a legal proposition, that would not be during the act, but after the act. But if the black dog, the one in question, the one shot, had been either alone or in consort with the other dogs, worrying the defendant's rabbits, and had been merely momentarily checked, or held at bay by the girls at the door, or the hired man, or anybody else, and the dog had not quit the chase, but was still intent upon it at a little distance out of his tracks from where he had previously begun to worry the animals, and he was still intent upon the act of worrying, either returning or ready to return as soon as the obstructions for getting at the rabbits were removed from him,—I think you would be authorized, if you see fit, to say that the worrying and killing were coexistent acts, concurrent acts, done at the same time; that they were one transaction.

"Now the proposition which I first stated is the one on which the plaintiff more particularly relies. And he goes further and says that the dog was not there at all; and even if he had been and had been engaged in worrying the animals, he had given up the chase, and was retreating, and at such distance that it was apparent to the owner of the animals that the dog had given up the chase.

And if such were proved it would subject the defendant to liability; there is no other ground for justification.

"Now, the defendant contends that the dog had not given up the chase; that, while he might have gone out of his tracks, shied off, he was intending to return, and was only held at bay, and upon these different contentions you are to examine the facts. Now which contention is true? You have heard the counsel elaborate them very carefully, and it is for you to decide whether the shooting was done while the dog was found there—if the dog was found there—whether the shooting was done while the dog was engaged in worrying, or whether it was after he had done the worrying; whether it was one act or different and separate acts as to time. You see a space of time would make them different acts. If the dog was away where. he could not act, his worrying was ended; or if it was another time, it could not be held to be the same thing. Therefore, it is that, if the dog was there the night before, that would have nothing to do with this alleged justification; because it would be a past offense on the part of the dog; it would be past misconduct and not present misconduct.

"I don't know as I can state this proposition any more plainly. The dog must be found in the act,—the act of the dog and the act of the shooting must be so closely connected as to be concurrent acts; as to be essentially done at the same time. It must be one offense, and one condign punishment for it, done at the same time.

"The plaintiff contends that the dog was not there at all, and, if this was the dog seen about there, he was not at the defendant's house, and was not at the worrying at all. Some question has been made here as to whether the defendant's witnesses identified this particular dog. I suppose it would not be contended that the dog killed was not the guilty dog, if he was there, and that the dog killed belonged to the plaintiff. But the more particular stress which the plaintiff lays upon the circumstances of the case is that if the dog had been there, if he had done any worrying, he had ceased to do any worrying, he had fled; he had given up his instinctive scent, and was not continuing it; and that anybody could have seen it; that the owner could have seen it; and the

hired man could have seen it; and if the dog was the culprit, it was for something that he *had* done and not for what he *was doing.*

"The proposition of the other side is that, substantially and virtually, the worrying and the killing was done at one time. And as you find whether or not the dog was shot while worrying the little animals of the defendant,—as you find that question,—so you will be authorized to find for the plaintiff or the defendant, so far as this point is concerned. And counsel have been very urgent about it. And dog cases are interesting cases to the owners. Dogs are prized by their owners, and are very annoying to the persons who are troubled by them. This case is to be decided somewhat upon the definitions given you. And (to repeat a little) at the time the dog was shot, was he still engaged in worrying these rabbits (if he had worried them before,) or was that a past act? Was it being repeated and continued along, or had it ceased? There is the distinction you have to draw, fairly, under all circumstances, and as you find it, the verdict must fall on one side or the other, so far as this point is concerned. . . . ."

*C. E. and A. S. Littlefield,* for plaintiff.

*D. N. Mortland and M. A. Johnson,* for defendant.

True, the statute does not say specifically that unlicensed dogs may be killed by any one, but by implication it says that such dogs are public nuisances, and if so killed the owner can have no redress or remedy against the killer; because as Chief Justice Shaw says in case of *Tower* v. *Tower,* 18 Pick. 263, in the opinion upon a similar statute to ours: "We think it was the intention of the legislature not to give to the owner of the dog a right to maintain an action for destroying him unless he had in fact given that security to the public which the act required, by causing him at the time to wear a collar with the name and residence of the owner thereon." *Blair* v. *Forehand,* 102 Mass. 145.

The question there determined was not whether the defendant had a right to kill the dog, but it was as to whether or not the owner of an unlicensed or uncollared dog could recover for his destruction, no matter how or by whom he might be killed.

This statute relating to dogs, is penal and prohibitory in its provisions. No dog under its provisions, can be kept legally, except that it be registered, numbered and licensed annually. The violator of the law is liable to a fine of ten dollars. The plaintiff here was a violator of a prohibitory and penal statute. Being, therefore, a violator of a prohibitory law, he cannot invoke the law to protect him in its violation, any more than a violator of the law relating to the Lord's Day can invoke the law to protect him. Section 11 shows the intention of the legislature to make the licensed dog legal property, and a subject of litigation by providing that if any person shall steal, secrete, or kill any registered dog, he shall be liable to the owner in a civil action; and that no action could be maintained to recover for the value of any other dog if he had any. This affirmative statute negatives the idea that a person who kills a dog, not so registered, shall be liable; and also the idea that the owner of an unlicensed dog may recover. This affirmative statute relating to recovery implies a negative. "If a thing is limited to be done in a particular form or manner, it excludes every other mode, and affirmative expressions introducing a new rule, imply a negative." Sedgwick on Construction of Statutory and Com. Law, p. 31, note A; *New Haven* v. *Whitney*, 36 Conn. 373.

"When a statute assumes to specify the effects of a certain provision, it is to be taken that no others were intended." *Perkins* v. *Thornburgh*, 10 Cal. 189.

It would be strange for the court to hold that any one may recover for, or be allowed to set a value even, upon a dog which the law forbids him to keep, and where too, a penalty is imposed by law for so doing, especially if when killed the dog is at large, and out of the control of his master or keeper.

The statute nowhere says a dog may be killed while in the act of so doing; but it does say if a dog "suddenly assaults," or is "found worrying," etc., its life may be taken. These two are the offenses mentioned in this statute, if the life is so taken while the dog is "outside of the inclosure or immediate care of its owner." We contend, therefore, that if this dog had been licensed and at liberty to rove as he pleased, the defendant would, under the facts

disclosed here, have been justified in shooting him. But this dog was not licensed; but was at large trespassing on defendant's premises and worrying and destroying his domesticated animals. *Hodge* v. *State*, 11 Lea, (Tenn.) 528.

Under the statute and by the common law, the defendant had the right to kill the dog when found trespassing on his premises, worrying his animals and destroying his property. In this case the act of worrying and shooting were the same, and at the same time. The shooting was done by the defendant for the purpose of protecting his property. 1 Hilliard on Torts, 645, and cases there cited.

It has been held that the owner of sheep is justified in killing a dog, which has destroyed some of his sheep, and returned upon his premises apparently for the purpose of destroying others, although the dog at the time he is killed was not in the very act of destroying his property. 1 Hilliard on Torts, 155.

SITTING: EMERY, HASKELL, WISWELL, STROUT, SAVAGE, JJ.
FOGLER, J., having been of counsel, did not sit.

STROUT, J. Trespass for killing plaintiff's dog. Defendant claimed that the dog was trespassing on his premises, and was, "then, or had been immediately before the shooting, engaged with two other dogs in chasing and worrying his domesticated animals, to wit, tame rabbits;" and that the killing was therefore justified.

The dog had not been licensed for that year, as provided by c. 287 of the laws of 1893, though it had been the previous year. The defendant claimed that because he was not licensed, that there was no property in him, and that anybody had the right to kill him, and therefore the owner had no redress.

The first exception is to the ruling of the presiding justice, "that a dog is property," and to the instruction "the defense takes the position that in this case there was no property in this dog to his owner, that he was a nuisance; that any person could kill and slay him because he was not licensed and registered according to the statute of this state. I rule against that proposition."

By the common law, a dog is property, for an injury to which an action will lie. *Wright* v. *Ramscot*, 1 Saunders, 84; *Athill* v. *Corbet*, Cro. Jac. 463. But larceny could not be committed of a dog. But by statute 7 and 8 Geo. 4, it is made a misdemeanor to steal one.

In *State* v. *McDuffie*, 34 N. H. 526, it is said, "dogs are domesticated or tame animals, and as much the subject of property or ownership as horses, cattle or sheep. Trespass or trover will lie for them." In *State* v. *Harriman*, 75 Maine, 562, where it was held by a divided court that a dog was not a domestic animal within the statute making it a criminal offense to kill or wound a domestic animal, it was said, "the dog is recognized as property so far as to afford a civil remedy for an injury, but seldom, if ever, any other."

If, as claimed by defendant, the fact that this dog was not licensed for that year, rendered him a nuisance, which is not admitted, he would be a public nuisance, and no individual was authorized to abate it, unless he was suffering damages therefrom peculiar to himself and distinct from the injury to the public. *Corthell* v. *Holmes*, 87 Maine, 27.

But the defendant claims that the statute of 1893 has by implication outlawed all dogs not registered as therein provided. That act provides for an annual registration of dogs before the first day of April, and imposes a penalty upon the owner if he fails to so register. Section 10 requires the selectmen "within ten days from the first day of May to issue a warrant" for killing unlicensed and uncollared dogs.

No authority to kill them is given under this statute except to a constable acting under such warrant—which cannot issue before the first day of May nor after the lapse of ten days thereafter. The legislature evidently contemplated, notwithstanding the requirement for registration before April 1, that dogs might be registered and licensed at a later date; for in the same section which requires registration before April 1, it is provided that "a person becoming the owner or keeper of a dog after the first day of April, not duly licensed, shall cause it to be registered, etc., as provided above."

It may be that the owner who fails to register his dog before April 1, may be liable to the penalty prescribed, but if he sells the dog at any time after that date, the then owner may register him and protect him against the warrant in the constable's hand; and as revenue appears to be one object of the act, it would seem that the owner who neglected to register on April 1, might do so later. This dog was shot April 24, before the municipal officers were authorized to issue a warrant.

It will be noticed that this act provides only for killing unlicensed dogs, by a constable under a warrant, and impliedly forbids killing by any other person.

The postponement to May 1, of the authority to the municipal officers to issue a warrant, indicates an intention to allow the negligent owner opportunity to repair his forgetfulness.

But, it is said that section 11, which provides a civil liability for stealing or killing a registered dog, by implication outlaws all that are not registered, and authorizes anybody to steal or kill them. If this provision adds any remedy not known to the common law, it certainly does not take away rights previously existing by it.

The defendant justified the killing upon the ground that the dog was worrying his rabbits. He asked the court to instruct the jury, "that if the jury find that, at the time of the shooting of the dog, he had killed or wounded the defendant's domesticated animals on the defendant's premises, and was again there apparently for the purpose of destroying others, the defendant would not be liable for killing the dog, but would be justified in so doing, even though the dog was not at the time in the act of destroying or worrying the animals.

This instruction was refused and rightly so. It was too broad. Revised Statutes, c. 30, § 2, provides that "any person may lawfully kill a dog that suddenly assaults him or another person, when peaceably walking or riding, or is found worrying, wounding or killing any domestic animal, outside of the inclosure or immediate care of his owner." Under this statute it is not enough that the dog may have worried or killed a domestic animal before, nor that there is a belief or apprehension that he intends to do so, to justify

the killing, but he must be in the act—or, in the language of the charge in this case, "the worrying and the shooting must be substantially at the same time." "If he had been worrying the defendant's rabbits, and had been merely momentarily checked or held at bay by the girls at the door, or the hired man or anybody else, and the dog had not quit the chase but was still intent at a little distance from out his tracks where he had previously begun to worry the animals, and he was still intent upon the act of worrying, either returning or ready to return as soon as the obstructions for getting at the rabbits were removed from him, I think you would be authorized, if you see fit to say that his worrying and killing were co-existent acts, concurrent acts, done at the same time, that they were one transaction."

The defendant has no reason to complain of this instruction. In *Morris* v. *Nugent*, 7 Car. & P. 572, it was held that to justify shooting a dog, he must be actually attacking the party at the time. In that case the dog run out and bit the defendant's garter, and the defendant turned round and raised his gun and the dog ran away, and he shot the dog as he was running away, and it was held he was not justified. So, to justify shooting a dog because he was worrying fowl, and could not otherwise be prevented, the party must show that the dog was in the act of worrying at the time. *Janson* v. *Brown*, 1 Camp. 41. See also *Wells* v. *Head*, 4 Car. & P. 568. It is not sufficient that the party had reasonable cause to believe that the dog was proceeding to worry the animals, but he should also have reasonable cause to believe that it was necessary to kill the dog to prevent him from killing the animals. So held in *Livermore* v. *Batchelder*, 141 Mass. 179.

The refusal to instruct and the instructions given were in accordance with law, and fully protected defendant's rights.

*Exceptions overruled.*