Vern TRAUTMAN, Plaintiff-Appellee,

v.

Rubin DAY, Defendant-Appellant.

Civ. No. 9524.

Supreme Court of North Dakota.

Jan. 8, 1979.

Chapman & Chapman, Bismarck, for defendant and appellant; argued by Daniel J. Chapman, Bismarck.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for plaintiff and appellee; argued by Patrick A. Conmy, Bismarck.

PAULSON, Justice.

Vernon Trautman [hereinafter Trautman], commenced an action against Reuben Day [hereinafter Day], for damages arising from shooting Trautman's dog. The shooting resulted in the death of the dog. The case was tried by a judge without a jury and the judge then awarded $300 damages without costs to Trautman. Day has appealed.

We affirm.

On the 24th day of December, 1976, west of Moffit, North Dakota, Vernon Trautman's father was hunting coyotes with the assistance of three greyhound dogs which were owned by his son, Vernon Trautman. He saw a coyote cross the road and then released the dogs. The dogs chased the coyotes for nearly a mile but were unsuccessful in the hunt. Shypoke, one of the greyhounds, ran across Day's pasture and through part of Day's herd of cattle. The cattle moved to the west and the dog traveled in another direction. While Trautman's father was awaiting the return of the dogs, he was chastised by Day's son who accused Trautman's father of hunting. Two of the dogs returned to the Trautman pickup, the third dog, Shypoke, continued to the other side of the pasture which was posted with signs stating "no hunting without permission." Trautman's father then saw several vehicles traveling back and forth on the section line approximately a mile from where he had originally released the dogs and saw the dog, Shypoke, standing near a pickup truck. He then drove to that area and discovered that Shypoke had been killed by three shots. Trautman then proceeded to the Day farm and inquired about the shooting. Day admitted that he had killed the dog and stated that he did not want any dogs around his premises. Day further stated that Shypoke was about three-quarters of a mile from his herd of cattle when the dog was killed.

There is one issue to be resolved:

1. Whether under Section 36–21–10 of the N.D.C.C., the dog was actually engaged in the act of worrying the livestock in order to justify the killing.

There are two statutes which are controlling in this case. They are Sections 36–21–10 and 36–21–11, N.D.C.C., which provide:

"*36–21–10. Dogs, wolves, and coyotes worrying livestock or poultry may be killed.*—Any person may kill any dog, wolf, or coyote kept as a domestic animal:

1. When he sees such animal in the act of killing, chasing, worrying, or damaging any livestock or poultry; or
2. When he discovers such animal under circumstances which satisfactorily show that recently it has been engaged in killing or chasing sheep.

A person who kills any dog, wolf, or coyote under conditions specified in this section shall not be liable in any civil action to the owner of such animal."

"36–21–11. *Owners of dogs liable for damages done to livestock—Procedure when damages done by pack of dogs.* —The owner of any dog which shall kill, wound, or chase any sheep or other domestic animal or poultry belonging to another person shall be liable to such other person for all damages caused thereby. If one or more of several dogs which are owned by different persons shall participate in the killing, wounding, or chasing of sheep or other domestic animals or poultry while running together, the owners of the respective dogs so running together may be sued jointly, and a joint verdict and judgment may be rendered against the owners of such dogs. If one or more of the defendants shall pay such a joint judgment, the payor or payors may have contribution from the defendants who have not paid in an appropriate action in which the respective damages committed by the several dogs running together may be prorated. No exemption shall be allowed to any person against whom a judgment is entered under the provisions of this section."

Day asserts that the trial court erred in its determination that the killing of a dog pursuant to Section 36–21–10, N.D.C.C., is permitted only while a dog is in the act of worrying the livestock; and that Day's remedy was contained in Section 36–21–11, N.D.C.C. Day's argument is unpersuasive.

The court adopted findings of fact and conclusions of law after the close of the trial. This court in numerous cases has enunciated the rule that findings of fact will not be disturbed on appeal unless they are clearly erroneous under 52(a), N.D.R.

Civ.P. The finding by the trial court in the instant case that the dog, a domestic animal, was not in the act of killing, chasing, worrying, or damaging any livestock is a finding of fact. *In Re Estate of Elmer,* 210 N.W.2d 815 (N.D.1973), *Becker v. Becker,* 262 N.W.2d 478 (N.D.1978), *Smith v. Riedinger,* 95 N.W.2d 65 (N.D.1959). A review of the evidence reveals that the record amply supports this finding of fact. The evidence further shows that the dog simply ran through the herd of cattle, that the cattle moved in one direction and the dog in another direction, that there was no killing, chasing, worrying, or damage to the livestock, and that the dog was shot at a location more than three-fourths of a mile from the livestock. The record does not support Day's contention that the dog was worrying the livestock and, accordingly, Day was not justified in killing the dog.

Day also asserts that the annotation in 15 A.L.R.2d 578, and particularly § 6, page 586, is in support of Day's justification for killing the dog. However, the cases which he cites, that is, *Simmonds v. Holmes,* 69 Conn. 1, 23 A. 702 (1891); *Smith v. Wetherill,* 78 App.Div. 49, 79 N.Y.S. 782 (1902) are distinguishable on the facts. Furthermore, *Chapman v. Decros,* 93 Me. 378, 45 A. 295 (1899); *Birdsong v. Wilkinson,* 13 Tenn.App. 276 (1931) are not in support of Day's position.

In addition, Day has cited *Failing v. People,* 105 Colo. 399, 98 P.2d 865 (1940). The *Failing* case does not uphold Day's position because in *Failing* the dog was shot in the act of worrying the cattle, and the Colorado statute, while nearly identical to Section 36–21–10, N.D.C.C., does not provide for the remedies afforded by the North Dakota statutes. In the case at bar the dog was not in the act of worrying the cattle, and neither Day nor his witness actually viewed Shypoke worrying the livestock.

Day further asserts that he was justified in killing Shypoke because he was chasing or worrying his livestock. 46 Words and Phrases, "Worrying Cattle," page 354, cites *Failing v. People,* supra, as follows:

"Under the statute authorizing killing of dogs found 'worrying cattle', dogs barking at cattle which stood facing them with heads down were 'worrying' the cattle within the meaning of the statute, and killing of the dogs was justified, notwithstanding there was no injury to the cattle, the quoted words meaning to run after, to chase, to bark at. *Failing v. People,* 98 P.2d 865, 867, 105 Colo. 399."

A perusal of the record indicates that Shypoke was neither worrying nor chasing Day's cattle. Therefore, Day was not justified in killing Shypoke.

Judgment affirmed.

ERICKSTADT, C. J., and PAULSON, VANDE WALLE and SAND, JJ., concur.

PEDERSON, J., concurs in the result.