STATE OF MAINE *vs.* CLIFFORD J. HARRIMAN.

Lincoln.    Opinion February 9, 1884.

*Dogs.    Domestic animals.    R. S., c. 127, § 1.*

Dogs are not recognized in the law as belonging to the class denominated "domestic animals."

One cannot be convicted under R. S., c. 127, § 1, (which relates to the killing or wounding of domestic animals) for killing a dog.

APPLETON, C. J., dissenting.

ON EXCEPTIONS by the respondent to the ruling of the court in overruling a demurrer to the indictment.

(Indictment.)

" State of Maine, Lincoln, ss.—At the Supreme Judicial Court begun and holden at Wiscasset, within and for the county of Lincoln, on the fourth Tuesday of October, in the year of our Lord one thousand eight hundred and eighty-two.

" The jurors for said state, upon their oath present, that Clifford Harriman, of Waldoboro, in said county of Lincoln, at: Waldoboro in said county of Lincoln, on the twenty-fourth day of July, in the year of our Lord one thousand eight hundred and eighty-two, with force and arms, one New Foundland dog, called ' Rich' of the value of one hundred dollars, of the goods and chattels of John D. Miller, then and there in the enclosure and immediate care of his master being, did then and there wilfully and maliciously kill and destroy, against the peace of said state, and contrary to the form of the statute in such case made and provided."

*R. S. Partridge*, county attorney, for the state.

*J. E. Moore*, for the defendant.

DANFORTH, J. Demurrer to an indictment found under R. S., c. 127, § 1, which provides for killing or wounding " domestic animals." The indictment alleges the killing a dog. Therefore the question involved is, not whether any particular dog or any number of dogs have become so domesticated as to be called domestic animals, but whether as a class they may properly be so called in distinction from that class known in law as *feræ naturæ*. If the dog belongs to the latter class the indictment must fail for the statute does not cover that class. A distinction has been recognized in the law between the two classes from the origin of the common law, from the earliest date of authentic history, when the wealth of individuals was reckoned by the number of their flocks and herds.

That by the common law the dog belongs to the wild class of animals is recognized by all the authorities, and in that state he

was and is utterly worthless, his flesh even being unfit for food, so that legally he was said to have no intrinsic value and "though a man may have a bare property therein, and maintain a civil action for the loss of them, yet they are not of such estimation, as that the stealing them amounts to larceny." 4 Bl. Com. 236; 2 Bishop's Crim. Law, § 773. It is true that dogs have extensively become domesticated, so that it is usual and perhaps not an improper use of language to call them "domestic animals," but as they still retain in a great measure their natural propensities, they may more properly be called domestic animals with vicious habits. They still keep their wild characteristics which ally them to the class of animals *feræ naturæ*, so much so, that in their domestic state they furnish no support to the family, add nothing in a legal sense to the wealth of the community, are not inventoried as property of a debtor or dead man's estate, or as liable to taxation unless under a special provision of the statute; but when kept it is for pleasure, or if any usefulness is obtained from them it is founded upon this very ferocity natural to them by which they are made to serve as a watch or for hunting.

From his greater attachment to his master in the domestic state, from which arises a well founded expectation of his return when lost, the law gives the owner the right of reclamation, but in all other respects the owner has only that qualified property in him which he may have in wild animals generally.

These continuing instincts, from which arises the danger that he may at any time relapse into his savage state, have made it necessary in all states to have a code of laws peculiarly applicable to the dog and not applicable to domestic animals; not for the protection of his life, but rather for the protection of the community from his ferocity. *Smith* v. *Forehand*, 100 Mass. 140; 20 Albany Law Journal, 6. Under these laws the dog is recognized as property so far as to afford a civil remedy for an injury but seldom if ever any other. In many cases it is made lawful for a man to kill the dog of another, as when he becomes a public nuisance. 1 Bishop, Crim. Law, § 1080, and note; and in various other instances as provided in our own state. R. S., c. 30.

Thus it will be perceived that originally the dog belonged to the class of animals *feræ naturæ,* and that up to the present time the law has treated him as continuing in that class and has never recognized him as belonging to the domestic class. The two statutes, c. 30, R. S., and c. 127, the first relating to dogs and the latter to domestic animals are so different that they cannot be reconciled. If a person is liable to be convicted for killing a dog under c. 127, he may be punished for what he has a legal right to do under c. 30.

But as dogs have never been recognized in the law as belonging to the class denominated "domestic animals," and as domestic animals alone are mentioned, it would be contrary to all rules of construction to extend the meaning of a statute so highly penal beyond its exact terms.

*Exceptions and demurrer sustained.*

BARROWS, VIRGIN, PETERS, LIBBEY and SYMONDS, JJ., concurred.

### DISSENTING OPINION BY

APPLETON, C. J. This is an indictment against the defendant for malicious mischief, under the provisions of R. S., c. 127, § 1, which provides that "whoever wilfully or maliciously kills, wounds, maims, disfigures or poisons any domestic animal . . shall be punished by imprisonment not more than four years, or by fine not exceeding five hundred dollars." It will be perceived that the largest discretion is allowed in regard to the punishment to be inflicted or the fine to be imposed.

The indictment alleges that the defendant on July 24, 1882, at Waldoboro, in the county of Lincoln, " with force and arms one Newfoundland dog, called 'Rich,' of the value of one hundred dollars of the goods and chattels of John D. Miller, then and there in the inclosure and immediate care of his master being, did then and there wilfully and maliciously kill and destroy, against the peace of said state and contrary to the form of the statute in such case made and provided."

To this the defendant has demurred, thereby admitting the truth of the allegations contained in the indictment.

The main question is whether a dog is a " domestic animal," for if he be, the defendant is guilty by his own admission and should be held criminally liable.

A dog is the subject of ownership. Trespass will lie for an injury to him. Trover is maintainable for his conversion. Replevin will restore him to the possession of his master. He may be bought and sold. An action may be had for his price. The owner has all the remedies for the vindication of his rights of property in this animal as in any other species of personal property he may possess.

He is a domestic animal. From the time of the pyramids to the present day, from the frozen pole to the torrid zone, wherever man has been there has been his dog. Cuvier has asserted that the dog was perhaps necessary for the establishment of civil society and that a little reflection will convince us that barbarous nations owe much of their civilization above the brute to the possession of the dog. He is the friend and companion of his master — accompanying him in his walks, his servant, aiding him in his hunting, the playmate of his children — an inmate of his house, protecting it against all assailants.

It may be said that he was "*feræ naturæ*" but all animals, naturalists say, were originally "*feræ naturæ*," but have been reclaimed by man, as horses, sheep or cattle, but however tamed, they have never like the dog, become domesticated in the home under the roof and by the fireside of their master.

The dog was a part of the agricultural establishment of the Romans and is treated of as such. There were the *canes villatici* to guard the villa of the Roman senator, the *canes venatici* accompanying him in his hunting expeditions, and the *canes pastorales* by whom his flocks were guarded. Virgil in his Georgics, has given direction as to their management and education. To-day, in many countries they are used for draught, as in France and Holland, and every where regarded as possessing value and as the subject matter of traffic.

The language of the statute is most general, " *any* domestic animal." The words are not technical or words of art. They are the words of the common people and should be construed as such. Nothing would more astonish the people for whom the laws are made than to learn that a bull or a hog was a domestic animal and that a dog was not.

The lexicographers define a dog as a " domestic animal." "A well known domestic animal." Johnson's Dictionary. "A well known domestic animal of the genus *canis*." Worcester's Dictionary. In Bouvier's Law Dictionary, he is defined as " a well known domestic animal." Olway the poet, says of them,

> " They are honest creatures
> And ne'er betray their masters, never fawn
> On any they love not."

So, in the encyclopedias he is *canis familiaris*, and called a domestic animal; so that in the ordinary use of language he is within the clear provisions of the statute under which this indictment was found. " The *domestic* dog has occasioned many legal disputes and the presumption of the common law of England is that he is tame." Campbell on Negligence, § 27.

By R. S., c. 6, § 5, a tax is imposed on dogs. This is a distinct and statutory recognition of their being property and having value, and that the owner has the same rights to their protection that he has for anything else he may own. In New York, dogs were taxed and this was held to be a statutory recognition of them as property and that they were the subjects of larceny. In *The People* v. *Maloney*, 1 Park, (N. Y.) Cr. 598, the court say that if there was no statute on the subject, they should feel bound by the rules of the common law, but " the revised statutes are inconsistent with the common law rule. By them dogs are so far regarded as property as to be in certain cases, the subject of taxation. The owner is made liable for the acts of his dog, thus recognizing that the dog has an owner and consequently that the thing owned is property. For every civil purpose, not only by statute, but by the decisions of courts, a dog is regarded as property." "All of the distinctions as to animals *feræ naturæ* " observes SETTLE, J., " as to their generous and base natures,

which we find in the English books, will not hold good in this country. . . . . We take the true criterion to be the value of the animal, whether for the food of man, for its fur or otherwise."

In the present case the Newfoundland dog, "Rich," of the value of one hundred dollars, was "in the inclosure and immediate care of his master." He was domesticated.

Whether the property of the master was originally of a qualified nature or not is immaterial. The dog was under his dominion and control. "While this qualified property continues, it is as much under the protection of law as any other property and every invasion of it is redressed in the same manner." 2 Kent's Com. 349.

A dog being a "domestic animal" and property, an indictment is maintainable under R. S., c. 127, § 1, for his malicious destruction. When the statute made malicious mischief indictable, it was held that a dog was the subject of absolute property and the killing of one under the act prohibiting malicious mischief was an indictable offence. *State* v. *Sumner*, 2 Porter, (Ind.) 377. There is such property in dogs as to sustain an indictment for malicious mischief. *State* v. *Latham*, 13 Iredell, 33. In *State* v. *McDuffee*, 34 N. H. 523, which was like this, for maliciously shooting a dog, FOWLER, J., says, "We can see no reason why the property of its owner in a valuable dog is not quite as deserving of protection against the wilful and malicious injury of the reckless and malignant, as property in fruit, shade or ornamental trees, whether standing in the garden or yard of their owner or in a public street, or any other species of personal property." Dogs have been included under "property" and their malicious destruction has been held indictable. 2 Wharton's Cr. Law, 1082. *A fortiori* is it so, when the owner is subject to taxation for his dog.

It is objected that the indictment does not describe the dog as "a domestic animal." But that is not required, if he be one, any more than it would be to say that a bull, a ram or a sow is a domestic animal. When the statute made it indictable "maliciously" to wound, kill, &c. any horse, cattle or other "domestic

beast," an indictment for wounding a hog, without averring that it was a " domestic beast " was held on the English authorities to be good. *The State* v. *Enslow*, 10 Iowa, 115. If the court will take cognizance that a hog or a bull is a domestic animal or beast without its averment in an indictment, much more will they that the dog is such animal.

Reliance is placed on R. S., c. 30, § § 2, 3 and 4, which impose certain liabilities on the owners of dogs. But these provisions, instead of sustaining, negative the defence. They imply owner-ship and liability on the part of the owner. They assume the relationship of the household. They recognize the domesticity of the dog — as having an owner or keeper, and of minors and servants as owners and keepers, and make the parent, guardian, master or mistress of such minor or servant responsible for the damages done by the dog so owned. The dog appertains to the household of which the master or mistress is made liable for his misdoings. The owner or keeper thus made responsible for the misdoings of his taxable dog or that of his children should not be left without legal protection when this property is wilfully and maliciously destroyed.

It is true that by § 2, any one may kill a dog under certain conditions therein set forth. But the very section impliedly negatives the right to kill except only when those conditions exist. By its provisions " any person may *lawfully* kill a dog that assaults him or any other person when *peaceably* walking or riding, &c. But it gives no · general right to kill dogs. The killing is only *lawfully* done when the person killing is peaceably walking or riding, &c. and not otherwise.

It is said that " if a person is liable to be convicted for killing a dog under c. 127, he may be punished for what he has a legal right to, under c. 30." Not so. He cannot be punished under c. 127, if the killing was justified under the provisions of c. 30. The statutes are perfectly consistent.

But it is argued that the indictment should negative the authority to kill in the cases mentioned in § 2. Such is not the law. The indictment follows the statute. It sets forth clearly an offence. If committed, it is for the accused to establish a justification.

When the enacting clause of a penal statute describes the offence with certain exceptions it is necessary to state in the indictment all the circumstances which constitute the offence and to negative the exceptions. *State* v. *Keen,* 34 Maine, 501. But this principle is not applicable here.

It is to be remarked that the statute, c. 200, of the laws of 1877, requiring the licensing and registration of dogs and that they should wear a collar round the neck with the owner's name thereon, was repealed by c. 72, of the laws of 1878. If it would have been necessary, had the first named statute been in force to have set forth in the indictment, as in *State* v. *McDuffee,* 34 N. H. 527, the facts of such license and registration, which we think it was not, the statute being repealed, those allegations would no longer be required.

The decisions cited in support of the defence do not apply. In *Blair* v. *Forehand,* 100 Mass. 137, and in the other cases in Massachusetts, the killing of the dogs was justified under the police laws of the state authorizing the killing of dogs not licensed nor having a collar. But there are no such statutes in this state — hence their utter want of applicability.

*Exceptions overruled.*