## Thomas J. Ford *vs.* Bernard H. Glennon.

Third Judicial District, Bridgeport, April Term, 1901.
Andrews, C. J:, Torrance, Baldwin, Hamersley and Hall, Js.

General Statutes, § 3757, provides that any dog which is "found doing or attempting to do mischief when not under the care of any person," may be killed; and Chap. 56 of the Public Acts of 1897 forbids the killing of a registered dog unless it "be justifiable in the protection of life or property." *Held* that the latest expression of the legislative will must control, and therefore the mere fact that the plaintiff's registered dog was doing mischief when shot and killed by the defendant, would not exonerate the latter, if it also appeared that such shooting was not actually or seemingly necessary for the protection of life or property. (*One judge dissenting.*)

A dog is "doing mischief" while chasing, frightening, annoying, or worrying a household cat.

A child of six is incompetent to take such care as the statute contemplates of a dog seven feet long and weighing 180 pounds; and unless otherwise attended, such dog is "not under the care of any person."

The defendant shot the plaintiff's registered St. Bernard dog as he stood with his forepaws against a tree looking up at the defendant's cat, which had run up the tree beyond the dog's reach. Presumably the dog could have been readily driven off by the defendant, had he made any effort to do so. He thought the dog was dangerous and had injured his wife, but she was at the time in a position of perfect safety. *Held* that under the Act of 1897 the defendant was liable for the value of the dog.

Argued April 23d—decided May 29th, 1901.

Action to recover damages for shooting and killing the plaintiff's dog, brought to the Court of Common Pleas in Fairfield County and tried to the court, *Curtis, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court. *Error and new trial ordered.*

*Permission to file a motion for reargument refused.*

The case is sufficiently stated in the opinion.

*Thomas M. Cullinan,* for the appellant (plaintiff).

*Jeremiah D. Toomey, Jr.,* for the appellee (defendant).

BALDWIN, J. The defendant was sued for killing a large and valuable St. Bernard dog belonging to the plaintiff. It had been registered under General Statutes, § 3746, was properly collared, and was not ferocious nor accustomed to bite mankind. On the day in question it was running loose on the street with a child of six, the plaintiff's daughter, but at such a distance as to be entirely beyond her control, when it gave chase to a cat of the defendant's which was a household pet. The cat ran up the stoop of the defendant's house, where the dog injured it somewhat. His wife flung open the door with a scream, which diverted the dog's attention for a moment, during which the cat leaped down and ran into the street, the dog pursuing. The defendant saw the chase from a distance, and heard the cat's cry of pain, on the stoop, and the scream of his wife. He believed that she had been hurt and hurried to the spot, revolver in hand. On reaching the front of the house he saw that the cat had run up a tree, and that the dog was standing with its forepaws on the tree, looking after it. He immediately shot and killed the dog, making no effort first to drive it off, and knowing that the cat was beyond its reach. He shot it because he thought it had injured his wife and was dangerous.

The trial court gave judgment for the defendant, on the ground that by General Statutes, § 3757, "all dogs . . . found doing or attempting to do mischief when not under the care of any person, may be killed."

The only mischief which the dog was doing or attempting to do, when shot, was to the cat.

A cat which is kept as a household pet may be properly considered a thing of value. It ministers to the pleasure of its owner, and serves, as was said by Coke of falcons, *ob vitae solatium*. Coke Inst. III, 109; 6 Bac. Abr. Trover, D. 10, 15; *Mullaly* v. *People*, 86 N. Y. 365.

To annoy a human being is to do a mischief to him. For a dog to worry a sheep has been recognized in our legislation as doing the sheep a mischief. Statutes, Ed. 1808, 595. For the same reasons, for a dog to chase, frighten, annoy, or worry a cat is to do the cat a mischief.

Although the defendant's cat had climbed beyond the reach of its pursuer, it was still being annoyed, when the shot was fired. The dog measured seven feet from his nose to the end of his tail, and weighed 180 pounds. To look down on such a great animal with its forepaws upon the trunk of the tree below would be necessarily a continued cause of fright.

The plaintiff's dog was therefore doing mischief when killed.

It was also properly held by the trial court to have then been "not under the care of any person." A child of six is incompetent to take such care as the statute contemplates of an animal so large and powerful.

But the statute relied on must be read in connection with those *in pari materia*, as well as in the light of their history and sequence. General Statutes, § 3757, is a substantial reproduction of "An Act for preventing Mischief by Dogs," passed in 1765. Statutes, Ed. of 1769, p. 323. That provides that such rules may be made by the authorities in any town " (whenever they shall judge the Inhabitants of the Colony, their Persons or Properties shall be in Danger) for the confining, restraining, killing or destroying of Dogs belonging to, or found within such respective Towns, as they shall judge reasonable for the effectual Security of such Inhabitants. . . . And that all such Dogs as shall not be confined or restrained within such Rules and Orders, made as aforesaid, may be liable to be killed and destroyed, by any Person or Persons whatever : And if any such Person shall be sued or prosecuted for the same, he may plead not guilty, and give this Act in Evidence, unless such Person commencing and prosecuting any such Action as aforesaid, shall prove, to the Satisfaction of such Court, before whom any such Trial may be had, that he had fully complied with such Orders and Rules as aforesaid. *Provided nevertheless*, That nothing in this Act shall be understood or construed to restrain or prevent any Person from killing or destroying any Dog found mad, or suspected to be mad; or otherwise shall be found doing Mischief, or attempting to do the same, when alone,

out of the Possession of his Owner. and distant from the Care. and Command of any Person having the Charge of such Dog ; any Thing in this Act, or any other Act to the contrary notwithstanding."

This Act first gives power to kill any dog not duly confined or restrained ; then saves any right of his owner to recover damages for the killing of one which, without his fault, had escaped from such confinement or restraint; and finally excludes any implication that these new provisions should cut off any preëxisting right of killing dogs that were mad, or found otherwise in mischief and unattended.

There were such preëxisting rights at common law. Any dog, whether before mischievous or not, and whether, if his disposition were mischievous, the owner did or did not know it, could be lawfully killed by any one, if actually found doing mischief or attempting to do it, alone, or out of the possession of its owner or the charge of a keeper; or under any circumstances when necessary for the preservation of property. *Woolf* v. *Chalker*, 31 Conn. 121, 129.

The Act of 1765 saved these rights, but it did not add to them. It stood, so far as the material provisions now in question are concerned, substantially unaltered for a hundred years. General Statutes, Rev. of 1866, p. 115. Towards the close of this period a statute was enacted for the regulation and taxation of all dogs, which provided that any person killing any registered dog " without justifiable cause " should be liable for its value. In the Revision of 1866, this follows the Act of 1765, and, like that, evidently refers to causes justifiable at common law. In the Revision of 1875, the Act of 1765 was condensed into the form retained in § 3757 of the Revision of 1888; the provision for taxing dogs was transferred to the Title regarding the Assessment of Taxes ; and that as to their registration and the killing of a registered dog without justifiable cause was omitted. Rev. of 1875, pp. 159, 267.

Three years later, the system of registration was reinstated, and the killing of any registered dog, unless " justifiable in the protection of life or property," made ground both for a civil action by the owner for his value, and a criminal prose-

cution. Public Acts of 1878, p. 325, § 10 ; id. 1880, p. 514. In the Revision of 1888 this constituted § 3755, and in 1897 that section was amended so as to give a civil and also a criminal action for either killing or injuring a registered dog, unless it were thus justifiable. Public Acts of 1897, p. 772, Chap. 56.

This Act of 1897 was in effect when the defendant killed the plaintiff's dog, and as the latest expression of the legislative will must control the disposition of the cause.

In *Simmonds* v. *Holmes*, 61 Conn. 13, it was intimated that, had it been necessary to decide the point, it would have been held that § 3755 did not restrain the general words of § 3757, so as to make them inapplicable to registered dogs. However this may have been, as the law stood, in the Revision of 1888, the later statute manifests an intent to protect them against all injury, the infliction of which cannot be justified as reasonably necessary for the protection of life or property.

Such a necessity need not be a real one, if at the time it appeared to be real to the person who did the injury. *Morris* v. *Platt*, 32 Conn. 75.

The finding shows that such was not the case in the present instance. The defendant thought the dog had injured his wife; but that was a past affair, and she was in a position of perfect safety. He also thought the dog "dangerous;" but ordinarily it was not, and at the time in question, while doing mischief to the cat, could, it is to be presumed, have been readily driven from the tree. *Wright* v. *Ramscot*, 1 Saund. 82, 84. The defendant made no attempt, before shooting, to protect his cat by driving the dog off, and the statute makes him responsible for its value.

The statutory phrase, "protection of life," is one to be liberally construed in favor of personal security; but in the present case that of no one was or appeared to be in any way endangered.

There is error and a new trial is ordered.

In this opinion the other judges concurred, except ANDREWS, C. J., who dissented.