CARL W. THURSTON *vs.* ALONZO A. CARTER.

Knox.    Opinion November 23, 1914.

*Larceny.    Public Laws, 1909, Chap. 222, Sec. 17.    Taxation.    Trover.*

1.    Under the common law, the question, whether the animal be wild or tame, is referred to our knowledge of his habits, derived from fact and experience. It is clear, therefore, from the popular meaning of the word domestic and from our knowledge of its habits, and from fact and experience that the cat is a domestic animal.

2.    The civil law classifies animals in two divisions, as follows;—Domestic or tame, which class includes cattle, horses, sheep, goats, pigs, poultry, cats, dogs and all other animals which, by habit or training, live in association with man.

3.    Domestic animals, like other personal and movable chattles, are the subject of absolute property.    The owner can maintain trover for them, and retain his property in them if they stray or are lost.

4.    A cat is a domestic animal within the meaning of Public Laws, 1909, Chap. 222, Sec. 17.

On exceptions by the plaintiff.    Exceptions overruled.

This is an action of trespass, in which the plaintiff seeks to recover damages for the killing of the fox hound of plaintiff by the defendant. The defendant, claiming to justify under Public Laws of 1909, Chap. 222, Sec. 17, alleged that he shot and killed the plaintiff's dog while it was chasing and worrying a cat belonging to him, and upon the land of the defendant.    At the conclusion of the evidence, the Justice presiding directed a verdict for the defendant; To which direction, the plaintiff excepted.    The bill of exceptions contained the stipulation, that if a cat is a domestic animal, the ruling below is to stand; otherwise, judgment is to be entered for plaintiff in the sum of fifty dollars.

The case is stated in the opinion.

*L. M. Staples,* for plaintiff.

*Frank B. Miller,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

BIRD, J. This action of trespass is brought for the recovery of damages for the killing of the fox hound of plaintiff by defendant. The latter, in justification, under Pub. Laws 1909, Chap. 222, Sec. 17, claimed that he shot and killed the plaintiff's dog while it was chasing and worrying a cat belonging to and upon the land of the defendant. After the introduction of all the evidence, the Court ordered a verdict for defendant. To this direction, plaintiff filed his bill of exceptions in which it is stipulated that if a cat is a domestic animal, the ruling below is to stand, otherwise judgment is to be entered for plaintiff in the sum of fifty dollars.

That portion of Sec. 17, Chap. 222, Pub. Laws, 1909, which defendant invokes is as follows:—"Any person may lawfully kill a dog which . . . is found worrying, wounding, or killing any domestic animal, when said dog is outside of the enclosure or immediate care of its owner or keeper."

The enactment is entirely free from technical words or phrases. It is therefore to be construed according to the common meaning of the language: R. S., Chap. 1, Sec. 6, I; *State* v. *Harriman,* 75 Maine, page 567. Domestic has been variously defined by lexicographers but with substantial uniformity of meaning. "Inhabitating the house, not wild." Johnson's Dictionary: "Belonging to the house or household; domesticated; tame; Standard Dict: Living in or near the habitations of man; domesticated; tame as distinguished from wild; living by habit or special training in association with man. Webster's New Int. Dict: "Relating to or belonging to the home or household, or to household affairs;" Cent. Dict. "Pertaining, belonging or relating to a house;" Black's Law Dict. See also *Kimball* v. *Water Co.,* 107 Maine, 467, 469. It is a broad term; *Osborn* v. *Lennox,* 2 Allen, 207, 209.

The cat is defined as "A domestic animal that catches mice;" Johnson's Dict. "A well known domesticated carnivorous mammal, kept to kill mice and rats and as a house pet." Standard Dict.

"A carnivorous quadruped (felis domestica) which has long been kept by man in a domestic state, as a pet and for catching rats and mice; . . . (it) is not known in the wild state." Webster's New Int. Dict.

The time of its first domestication is lost in the mists of the dawn of history but it is apparent that the cat was a domestic animal among the early Egyptians by whom it came to be regarded as sacred as evidenced by the device of Cambyses during his invasion of Egypt, B. C., 525 or 527 which could scarcely have been feasible if the animal was then wild. From that day to this it has been a dweller in the homes of men. In no other animal has affection for home been more strongly developed and in none, when absent from home, can the *animus revertendi* be more surely assumed to exist.

"But the common law has . . . adopted the test laid down by Puffendorf, by referring the question, whether the animal be wild or tame, to our knowledge of his habits, derived from fact and experience." II Kent, *349.

It is clear, therefore, from the popular meaning of the word domestic and from our knowledge of its habits gained from fact and experience that the cat is a domestic animal.

In "The Laws of England" it is laid down that "the common law follows the civil law in classifying animals in two divisions as follows—

"(1) Domestic or tame (*domitae* or *mansuetae naturae*). This class includes cattle, horses, sheep, goats, pigs, poultry, cats, dogs and all other animals which by habit or training live in association with man. I Halsbury, 365." And following this definition, the same author declares that "Domestic animals, like other personal and movable chattels, are the subject of absolute property. The owner can maintain trover for them, and retains his property in them if they stray or are lost." Id. See also *Yates* v. *Higgins*, L. R., 1 Q. B. D., 1896, 166; *Harper* v. *Marcks*, L. R., 1894, 2 Q. B. D., 319, 322, 323.

But it is urged that the cat is not the subject of larceny and, therefore, its owner can have but a qualified property therein. Among the ancient Britains it was held to have intrinsic value and the theft of a cat was punishable by fine. When, however, larceny became punishable capitally, the courts, to mitigate the severity of the law, held that certain animals were not the subject of larceny as not fit for food, or as base, or as kept only for pleasure, curiosity, or whim.

They are instanced by Blackstone, as "dogs, bears, cats, apes, parrots, and singing birds, because their value is not intrinsic, but depending only on the caprice of the owner." 2 Com. x393. And Hawkins, speaking of the subjects of larceny, says "Thirdly, they ought not to be things of a base nature, as dogs, cats, foxes, monkeys, ferrets and the like, which, howsoever they may be valued by their owner, shall never be so regarded by the laws, that for their sakes a man shall die." 1 Hawk P. C., 214; 1 Gabb., Cr. L., 569. And so from the time of Sir Mathew Hale to the case of *Sentell* v. *New Orleans &c. Railroad*, the enumeration, with changes to suit the times or individual predilections, has been repeated: 1 Hale, P. C., 512; 166 U. S., 698, 701. *Cessante ratione legis, cessat ipsa lex.*

A cat which is kept as a household pet may be properly considered a thing of value. It ministers to the pleasure of its owner, and serves, as was said by Coke of falcons, *ob vitae solatium*. *Ford* v. *Glennon*, 74 Conn., 6, 7. See also *Mullaly* v. *New York*, 86 N. Y., 365, 366. "It follows then, that the cat must stay at home."

If it be urged that they are not liable to taxation, it is true that they are not enumerated by name as subjects of taxation in the statutes of the State but the general language of the tax enactments is sufficient to include them, even if the owner had but a qualified property. Poultry is not mentioned by name neither are its various kinds in the statutes respecting taxation. Nor yet the ass albeit its side issue is. But it will scarcely be contended that hens, geese, ducks, or turkeys, or asses are not liable to be taxed.

The change of sentiment respecting animals and the light in which they are regarded at the present day is admirably shown in the provisions of law punishing cruelties inflicted upon them and their sweeping character is indicated in the provision that the word animal as employed in our statutes upon this subject "includes every living brute creature." On the other hand while enactments are numerous giving damages for injuries caused by various animals and providing for their license and regulation, our statutes are silent as to the "harmless necessary cat."

It remains to inquire if there be aught in the context of Pub. Laws, Chap. 222, which militates against the conclusion reached. As already seen the word domestic is a broad term (*Osborn* v. *Lennox*, 2 Allen, 209) and, while its significance must always be determined with reference to the subject matter and the relation in which it appears,

(107 Maine, 471) we find nothing in the act in question which indicates that the term domestic is used in other than its ordinary and popular meaning as we have found it to be defined.  See *Osborn* v. *Lennox*, 2 Allen, 207, 209; *Brown* v. *Graham*, 80 Neb., 281, 284.

*Exceptions overruled.*