# State of Connecticut *v.* Henry J. Wrobel

## Appellate Division of the Circuit Court

### File No. CR 12-4328

Argued June 1—decided October 16, 1964

*William J. Butler,* of Hartford, for the appellant (defendant).

*James D. Mirabile,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J. The defendant was found guilty, after a trial to a jury, of cruelly beating or unjustifiably injuring an animal in violation of General Statutes § 53-247, which is printed in the footnote.[1] In his appeal, he has assigned error in rulings on evidence; in the refusal of the court to submit the defendant's request to charge; in errors in the court's instructions to the jury; in the denial of the defendant's motion for a directed verdict; in overruling his motion to set aside the verdict; and in refusing to correct the finding. To the extent that the last motion was directed to the portion of the finding which contains the prosecution's claims of proof, the ruling was correct. With respect to requested claims

[1] "Sec. 53-247. CRUELTY TO ANIMALS. Any person who overdrives, drives when overloaded, overworks, tortures, deprives of necessary sustenance, mutilates or cruelly beats or kills or unjustifiably injures any animal, or who, having impounded or confined any animal, fails to give such animal proper care or neglects to cage or restrain any such animal from doing injury to itself or to another animal or fails to supply any such animal with wholesome air, food and water, or unjustifiably administers any poisonous or noxious drug or substance to any domestic animal or unjustifiably exposes any such drug or substance, with intent that the same shall be taken by an animal, or causes it to be done, or, having charge or custody of any animal, inflicts unnecessary cruelty upon it or unnecessarily fails to provide it with proper food, drink or protection from the weather or cruelly abandons it or carries it or causes it to be carried in an unnecessarily cruel manner, or sets on foot, instigates, promotes or carries on or performs any act as assistant, umpire or principal in, or is a witness of, or in any way aids in or engages in the furtherance of, any fight between cocks or other birds, dogs or other animals, premeditated by any person owning, or having custody of, such birds or animals, or fights with or baits, harasses or worries any animal for the purpose of making it perform for amusement, diversion or exhibition, shall be fined not more than two hundred and fifty dollars or imprisoned not more than one year or both."

of proof of the defendant, we have made the corrections to which the defendant is entitled. Maltbie, Conn. App. Proc. § 160.

The essential facts, which are not in dispute, may be summarized as follows: The defendant, on May 2, 1963, the date of the alleged offense, was, and for twenty years had been, the dog warden of East Hartford. In response to complaints which he had received on that date concerning roaming ·dogs in the vicinity of 99 Great Hill Road, he went there prepared to investigate the complaints and to act in his official capacity. Upon arrival, he noticed two stray dogs, one of which he caught and placed in a cage in his truck without incident. The other, a black dog, remained in the vicinity. The defendant learned from Mrs. Parker, who resided at the address, that the black dog and other dogs had been around her house because a female dog she owned was in heat. The defendant fastened a noose on the black male dog and proceeded to lead it away. The dog slipped out of the noose but remained close by. A large number of children, returning to school from lunch, had gathered at the scene. The defendant tried to fasten the noose again but the dog, in eluding him, bit him on the right hand and arm. The defendant then lifted the dog by its hind leg and carried it to the truck. While he was reaching to open the door, the dog turned and locked its teeth onto the defendant's knee, causing him severe pain. To extricate himself, the defendant seized the dog by both hind legs and slammed it against the truck. The dog then locked its jaws onto the defendant's right foot. The defendant tried to shake the dog loose but was unsuccessful. The defendant then, still holding the dog by its legs, stepped on the dog's head with his left foot and pinned the dog to the ground. He then secured the dog and put it in the cage in the truck. Subsequently, the defendant's

leg and knee started to swell and, that same day, he was treated at the Hartford Hospital emergency room for dog bites of the right hand and thigh. On the following day, the dog was examined by a veterinarian and was found to have a bruise over the left eye, a small wound over the left ear, a small wound on the left shoulder, small wounds in the mucous membranes of the mouth, and inflammation around the wounds.

At the close of the evidence, the defendant moved for a directed verdict and the motion was denied. There was conflicting evidence on the issues of cruelty and justification and, on the state of the evidence, it could not be said that the issues of fact were left to conjecture, surmise and speculation. *Blados* v. *Blados,* 151 Conn. 391, 395. The court's action in submitting the facts to the jury was proper.

The principal and decisive claim in the defendant's appeal is that the court erred in its charge to the jury in three material respects: first, by refusing to give the defendant's requested instruction; second, by its incorrect construction and definition of the provisions of the statute under which prosecution was brought; and, third, by omitting to instruct the jury to disregard certain allegations in the bill of particulars of which no proof had been offered.

The defendant requested the court to instruct the jury on the applicability of § 22-358 (b) and (d), which exonerates a person from criminal responsibility for killing a dog which has bitten him.[2] The presiding judge charged the jury as follows: "Now,

[2] "Sec. 22-358. KILLING OF DOGS DOING DAMAGE. . . . (b) Any person who is bitten, or shows visible evidence of attack by any dog, when such person is not upon the premises of the owner or keeper of such dog, may kill such dog during such attack or make complaint

from that bill of particulars, we can see what portions of the statute apply. Now, the statute [§ 53-247] is entitled 'Cruelty to Animals.' But the legislature defined in this statute just what cruelty is. Now, it says: Any person who cruelly beats or unjustifiably injures any animal. Now, cruelty legally is defined as any act or omission or neglect whereby unjustifiable physical pain or suffering is caused or permitted to be caused. That is the meaning of the word 'cruelty.' Now, beating is the striking with the hand or the foot or with an object or anything else, or if you will, picking up the animal and throwing it or swinging it at an object. That would be, of course, the definition of cruelty, cruel beating. Now, it says: Or unjustifiably injures any animal. Now, all human actions are either just or unjust, as they are in conformity to or in opposition of the law. This act was either justifiable or not justifiable, as in conformity to or in opposition to the law. You are to determine whether this act was justifiable or not justifiable. Now, you have heard the testimony here, and you have heard the state's testimony stating what took place. On the other hand, the accused says that he came there in the performance of his duties to seize this dog and was in the act of seizing this dog when all this happened. You are to determine whether whatever happened to that dog was done to him justifiably or unjustifiably. I believe there has been some reference made by the defense to the effect of calling your attention to a statute, and the defense counsel has seen fit to read from that statute. It is § 22-358. I don't think it is necessary for me to read it to you except to point out to you: Any person who is bitten, or shows visible evidence of attack by any dog, when such person

to the state warden, any deputy state warden or the warden of the town wherein such dog is owned or kept . . . . (d) Any person who kills any dog in accordance with the provisions of this section shall not be held criminally or civilly liable therefor."

is not upon the premises of the owner, and so forth, and so forth, and it states what he may do. Then he called to your attention the fact that any person who kills any dog in accordance with the provisions of this section shall not be held criminally liable therefor. I am charging you here that the accused is not charged with killing this dog. He is charged with inflicting unjustifiable injury. That is what he is charged with."

The defendant, in our opinion, was not precluded from claiming the benefit of the provisions of § 22-358, and the court, instead of excluding his claim of law from the jury's consideration, should have granted his request and instructed the jury how the statute should be applied to the facts before them. At the time of the alleged incident, the defendant was performing his duty as dog warden. He was empowered under § 22-332 to take into custody and impound any dog roaming at large contrary to the provisions of § 22-364. The evidence plainly showed that the dog was roaming on the highway or on the premises of one who was not the owner of the dog and that it was not under the control of the owner or keeper. (Under the amendment to § 22-364 contained in Public Acts 1963, No. 613, § 32, effective October 1, 1963, such unauthorized presence of a dog constitutes prima facie evidence of violation of the statute.) The duty of the defendant to capture and impound the dog was paramount to any consideration of method necessary in overcoming the resistance of the dog to being placed in custody. If, in forcibly subduing the dog, the defendant was bitten, and, while he was taking such measures as were reasonably necessary to accomplish his duty, in the situation facing him at the time, the dog was harmed, the defendant was entitled to assert his immunity from prosecution and civil action for the injury caused. The court,

in a literal construction of the statute, erroneously charged that § 22-358 did not apply because the defendant was not accused of killing the dog.[3] The argument of the state that the defendant did not fall within the class of protected persons because he had assumed the risk of physical injury as a hazard of his occupation and had provoked the dog does not merit discussion. Those observations refer to matters which may serve as defenses in a civil action against the owner of the dog; they have no place in a criminal prosecution.

"In construing a statute, courts are often required to look beyond the literal meaning of the words used in it to its history, the language used in all of its parts, and to its purpose and policy. *Giammattei* v. *Egan,* 135 Conn. 666, 668 . . . ." *Bergner* v. *State,* 144 Conn. 282, 288. Consideration must be given to the mischief the law was designed to remedy; *Lee* v. *Lee,* 145 Conn. 355, 358; and a legislative enactment which confers a privilege or carries a right must be construed, by implication, as carrying with it everything that is necessary to make the realization of the privilege or the establishment of the right effectual and complete. *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 210; *Bergner* v. *State,* supra. The portions of the statute under review, though expanded, are substantially a restatement of rights existing at common law. See *Ford* v. *Glennon,* 74 Conn. 6, 9; *Woolf* v. *Chalker,* 31 Conn. 121, 129. The kind and amount of force used on a dog during an attack upon a person in which the person is bitten or shows visible evidence of the attack, or to prevent the doing of mischief by a dog to person

---

[3] Prosecution was not brought under § 22-351, which provides for criminal penalties as well as civil liability against one who unlawfully kills or injures a licensed dog or any dog under the age of six months. It has been held that the word "unlawfully," as used in that statute, refers to conduct which is wilful or at least so wanton as to be equivalent thereto. *Griffin* v. *Fancher,* 127 Conn. 686, 690.

or property, should be reasonably proportioned to the kind and amount of danger present, to the apparent consequences of using such force, and the apparent consequences of not using it. Killing of the dog is justified if, under all the circumstances, it reasonably appears necessary to resort to that extremity. See approved charge in *Simmonds* v. *Holmes,* 61 Conn. 1, 9. The refusal of the defendant's request to charge was harmful error.

The charge also was inadequate in that it failed to define and relate to the evidence the words "cruelly" and "unjustifiably" as they appear in the statute. It was not enough, for the guidance of the jury, to define cruelty in its general sense or abstract connotation. See, e.g., *Greenberg* v. *Branciere,* 100 Conn. 596, 600. What is cruelty under one set of circumstances may not be cruelty in another. The issue of justification, we believe, was treated too abruptly. It was left to the jury to determine whether the defendant was justified in doing what he did. Further explication, it appears, was needed, pointing to the extent and limits of the defendant's duty and authority as dog warden: that in performing his duty he may not only resort to force, beating, injuring or killing a roaming dog but may be required to do so; that the application of such force, although it may appear to be cruel to bystanders, who are under no responsibility to act, may be the practicable and reasonable means to accomplish the capture and impounding of the offending dog, and therefore not within the statutory meaning of cruelty. On the other hand, the defendant was not immune from prosecution if he acted in excess of his authority or in abuse of the discretion vested in him; and it was for the jury to determine whether the acts of the defendant were such as were reasonably necessary to accomplish the lawful purpose of confining the dog, or whether

they amounted to a wanton, brutal, or vicious use of force; and whether the conduct of the defendant was such as flowed from vengeful, inhuman motives or was impelled by the urgency of duty and the need for self-protection. The defendant's motion to set aside the verdict should have been granted. *Fleischer* v. *Kregelstein*, 150 Conn. 158, 161.

The defendant further claims error in that the court permitted the bill of particulars to go to the jury without instructing them to disregard certain specifications of which allegedly there was no evidence. The court had read these allegations in its charge. During the trial, the defendant had objected to evidence being received as to any acts of cruelty other than those described in the bill of particulars, and error is assigned in the admission of such evidence. We have examined the evidence, in which the detailed observations of the witnesses of the acts of the defendant were in irreconcilable conflict; nevertheless, there appears to have been some evidence to support, however remotely, the material specifications in the bill of particulars. We cannot say as a matter of law that the court erred either in its omission in the charge or in permitting the bill of particulars to be examined by the jury without instructing them to disregard the challenged allegations.

Because of the likelihood that upon a new trial occasion may arise for rulings on the same matters of evidence, we briefly consider the rulings which are claimed to have been erroneous and we believe to have been in error.

The defendant offered to prove and endeavored to elicit, through direct and cross examination of two witnesses, one of whom was a veterinarian, that the biological condition of Mrs. Parker's dog had attracted the black dog in question and other stray

dogs; that the condition of the female dog could reasonably be expected to excite an instinctual amatory drive in the black dog which brooked no restraint; and that the frustration of his mating impulse would naturally arouse in him a vicious, defiant and violent response. This offer of proof was for the purpose of assisting the accused in his defense by showing that the dog was of a dangerous disposition and that its vicious resistance to confinement rendered the forcible measures used by the defendant necessary, reasonable and justifiable. The defendant maintains that his defense was crippled because of the court's exclusionary rulings on all this evidence on the ground of irrelevancy. We are inclined to agree. "The court has a wide discretion in its ruling on the relevancy of evidence." *State* v. *Bassett,* 151 Conn. 547, 551. "A party cannot, however, be deprived of his right to support his cause by introducing evidence tending to prove facts upon which issue has been joined, if the evidence is not excluded by some rule of law." *Papa* v. *Youngstrom,* 146 Conn. 37, 40; see also *Donch* v. *Kardos,* 149 Conn. 196, 202. The testimony sought went to the heart of the issue of justification, and the error in excluding it was materially harmful to the defense.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion PRUYN and JACOBS, Js., concurred.