**STATE of Maine**

v.

**David KOPLOW.**

Supreme Judicial Court of Maine.

Argued May 10, 1983.

Decided June 6, 1984.

Paul Aranson, Dist. Atty., Bethanne Poliquin, (orally) Asst. Dist. Atty., Portland, for plaintiff.

David Koplow, Pro Se (orally) c/o Bosal Foam, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, CARTER *, and WATHEN, JJ.

NICHOLS, Justice.

Through history the relationship between man and dog has been the subject of story, verse and song. From time to time it also has been the subject of heated litigation.

Such litigation is frequently attributable to widely divergent perceptions about the proper role and place of dogs in a civilized society. A judge of the New York Supreme Court has summarized the situation with particular insight:

> All mankind is divided into three parts. The larger proportion love dogs passionately, harbor them, fawn upon them, share their lives and troubles and joys with them, and defend with vehemence any attack or infringement of canine rights .... A smaller proportion of mankind hates dogs passionately and expresses detestation for their barking and leaping and slavish affection, and for their generous leavings in public places. Landlords and neighbors frequently fall into this category. Then there is that tiny fragment of the population which apparently does not care one way or another about dogs, and devotes its attention to problems of lesser impact like nuclear destruction, economic disaster, over-population, and the pernicious influence of pornography.

*Schnapp v. Lefkowitz,* 101 Misc.2d 1075, 1076, 422 N.Y.S.2d 798, 800 (N.Y.Sup.Ct. 1979).

Indeed, in the past our own Court has not wholly escaped the factionalism and divided loyalties which frequently characterize disputes involving dogs.[1] Mindful that passion is no substitute for reason, we turn to the case here on appeal.

The Defendant, David Koplow, resides in Portland, along with a number of dogs.

---

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

1. The paradigmatic case is *State v. Harriman,* 75 Me. 562 (1884), in which this Court struck down an indictment alleging the killing of a Newfoundland dog. The majority of the Court noted that at common law the dog was considered a wild animal, "and in that state he was and is utterly worthless, his flesh even being unfit for food, so that legally he was said to have no intrinsic value ...," *id.* at 563–64, and ultimately concluded that dogs are not domestic animals. *Id.* at 565. *Cf. Thurston v. Carter,* 112 Me. 361, 364–65, 92 A. 295, 296 (1914) (cats are domestic animals); *Cotton v. Wiscasset, Waterville &*

*Farmington R.R. Co.,* 98 Me. 511, 513, 57 A. 785, 785 (1904) (sheep are domestic animals).

In an impassioned dissent protesting this slighting of the canine species, Chief Justice Appleton wrote:

> From the time of the pyramids to the present day, from the frozen pole to the torrid zone, wherever man has been there has been his dog .... He is the friend and companion of his master—accompanying him in his walks, his servant, aiding him in his hunting, the playmate of his children—an inmate of his house, protecting it against all assailants.

*State v. Harriman,* 75 Me. at 566. The minority view ultimately prevailed a century later. *See State v. Leonard,* 470 A.2d 1262, 1263–65 (Me. 1984).

In the latter months of 1981 these dogs were involved in two incidents which ultimately gave rise to this appeal. The first occurred on October 28, 1981, and involved an altercation between the dogs and an employee of Port City Glass, on India Street. Two of the Defendant's dogs ended up with knife wounds and the employee sustained a dogbite.

The second incident, which occurred on December 3, 1981, took place on Atlantic Street. One small brown dog owned by the Defendant jumped up on Mabel Staples, of Portland, causing her to fall. Growling and barking, the rest of the dogs then surrounded the victim.

As a result of these two incidents, the Defendant was charged by civil complaint with eight counts of dogs running at large, 7 M.R.S.A. § 3455,[2] and in another civil complaint with three counts of keeping a dangerous dog, 7 M.R.S.A. § 3605.[3] Following a trial in District Court, Portland, where the Defendant was represented by counsel, the State prevailed on all eleven counts.

■ With respect to the dogs-at-large complaint, the District Court imposed the following "sentence" on the Defendant:

$800 Fine, suspend all but $150. Dogs not out of house without being on leash if more than three (3) dogs. Six (6) months probation.

The keeping-ä-dangerous dog complaint resulted in a separate "sentence":[4]

Small brown vicious dog not to go out of house except on leash, if out of house, to be picked up and held at owner's expense until further order of the court.

■ The Defendant appealed both convictions to the Superior Court, Cumberland County, where again he was represented by counsel. That Court struck the portion of the dogs-at-large judgment which imposed six months of probation on the Defendant. In all other respects, the Superior Court affirmed the two judgments.[5]

Bringing his appeal to this Court pro se, the Defendant here challenges his two convictions on a variety of grounds. We conclude, however, that although pressed vigorously, all of his arguments must fail either because they were not preserved below, because they rely on an insufficient record, or because they are without discernible merit.

■ In reviewing the record, however, we do note an obvious error which requires correction. See State v. Guay, 451 A.2d 631, 633 (Me.1982). Part of the remaining judgment on the dogs-at-large counts states: "Dogs not out of house without being on leash if more than three (3) dogs." There is no statutory authorization for such a condition. 7 M.R.S.A. § 3457 (1979),

**2.** Section 3455 provides:
*Dogs not to run at large:*
It shall be unlawful for any dog, licensed or unlicensed, to run at large, except when used for hunting.
"At large" means off the premises of the owner and not under the control of any person by means of personal presence and attention as will reasonably control the conduct of such dog.
"Owner means any person or persons, firm, association or corporation owning, keeping or harboring a dog."
7 M.R.S.A. § 3455 (Supp.1982–1983).

**3.** In pertinent part, section 3605 states:
"Whoever is assaulted by a dog when peaceably walking or riding or finds a dog strolling outside of the premises of its keeper and the said dog is not safely muzzled, may, within 4

days thereafter, make written complaint before the District Court having jurisdiction, that said dog is dangerous and vicious .... If, upon hearing, the court is satisfied that the complaint is true, he shall order the dog to be killed or order said owner or keeper of said dog to muzzle the same, restrain the same, or confine said dog to the premises of said owner or keeper and the owner or keeper shall pay the costs ...."
7 M.R.S.A. § 3605 (1979).

**4.** Because neither section 3455 nor section 3605 is a criminal offense, the court properly should have entered a "judgment" rather than a "sentence."

**5.** The Court correctly ruled that "[t]here can be no probation under these circumstances." The sole penalties for dogs at large are specified in 7 M.R.S.A. § 3457. Probation is not among these.

which specifies the penalties for violations of section 3455, provides that the only sanction for this civil violation is "a forfeiture of not less than $25 nor more than $100 ...." Thus, the leash requirement imposed on the Defendant is no more valid than the term of probation, and it, too, must be stricken.[6]

The entries are: In CV–82–286: Remanded to Superior Court to be remanded to District Court to amend judgment by deleting requirement that Defendant leash his dogs. As so amended, judgment affirmed.

In CV–82–285: Judgment affirmed.

All concurring.

---

**6.** We note that the leashing of dogs is not required by the terms of section 3455. That section only requires that dogs off the premises of the owner be kept under his control "by means of personal presence and attention as will reasonably control the conduct of such dog."

This is not to say that an owner may not be well-advised to leash his pet. Our case law is replete with examples of the mischief wrought by unleashed dogs. *See, e.g., Tasker v. Arey,* 114 Me. 551, 551, 96 A. 737, 738 (1916) (dog loose in highway struck by wheel of car, causing vehicle to overturn); *Behrens v. Bertram Mills Circus, Ltd.,* 2 K.B. 1, 17 (1957) (dog loose in circus frightened elephant which knocked down stall, injuring midget).