(Hamilton Co., O., Common Pleas.)

Decided April 1, 1898.

H. H. FAGIN v. THE OHIO HUMANE SOCIETY

(1). The act of April 27, 1896, requiring that owners of dogs in cities of the first class, first grade, shall pay a license fee of $2.00 for each dog, or if not paid, that the dog shall be disposed of by the Cincinnati Humane Society, such law to be enforced by such society, is an act of general nature inasmuch as dogs are found in all parts of the state, and being made applicable to Cincinnati only, is therefore unconstitutional for lack of uniformity of operation.

(2). In Ohio it is well settled that dogs are animals of value and therefore property; and inasmuch as the act in question provides for the taking of these animals without due process of law, it is unconstitutional on this ground also.

---

S. W. SMITH, J.

In this case the petition alleges that the Ohio Humane Society is a private corporation organized under the laws of Ohio. It also sets forth that the plaintiff is the owner of a valuable

[COPYRIGHT, 1899, BY CARL G. JAHN.]

setter dog; that he has owned said dog for a number of years; that said dog has become attached to him and has a great value outside of its pecuniary value. The petition further alleges that the defendant, the Ohio Humane Society, through its agents, has threatened to and is about to seize and destroy or otherwise dispose of said dog, and prays that the society, its officers and agents may be temporarily enjoined from seizing and destroying or otherwise disposing of said dog, and upon final hearing that said injunction may be made perpetual.

To this petition the defendant, the Ohio Humane Society, files an answer in which it denies that it is a private corporation organized under the laws of Ohio. It alleges that it is a corporation under the laws of Ohio; that its object is to create public sentiment among the people of Ohio in favor of enacting and enforcing laws for the prevention of cruelty, especially to children and animals; to prosecute persons violating such laws, and to establish and to encourage auxiliary societies and agencies throughout the state; that in pursuance thereof it has organized and has been in existence since the year 1873, and has fully carried out its objects and purposes.

It further alleges that on the 27th day of April, 1896, the legislature of Ohio passed an act entitled, "An act to regulate the licensing of dogs, and the collection and disposition of dog license fees in cities of the first grade of the first class, and to provide for the disposition of unlicensed dogs," as follows:

"An act to regulate the licensing of dogs and the collection and disposition of dog license fees in cities of the first grade of the first class, and to provide for the disposition of unlicensed dogs.

"Section 1. Be it enacted by the general assembly of the state of Ohio, that every person who owns or harbors a dog within the corporate limits of any city of the first grade of the first class, shall procure a yearly license and pay the sum of two dollars for each dog as hereinafter provided; and in applying for such license the owner shall state in writing, the name, sex, breed, age, color and markings of the dog, for which the license is to be procured.

"Sec. 2. Licenses granted under his act shall date from the first days of July, October, January or April, in each year, and shall be issued for one year from the date of issue.

'Sec. 3. All license fees which shall become due on said first days of July, October, January or April shall be considered delinquent if not paid within fifteen days thereafter, or, for every month or a fraction of a month a license shall remain delinquent after the fifteen days allowed from the first days of July, October, January or April as aforesaid, there shall be added to the whole amount of such license fee a penalty of five per cent which shall be collected in the same manner as the license fee. But the addition of a penalty to a license shall not exempt the person from whom such license fee may be collectible from any penalty to which he or she may be liable for violating of the provisions of this act.

"Sec. 4. Each certificate of license or renewal shall state the name and address of the owner of the dog, and also the number of such license or renewal.

"Sec. 5. Every dog so licensed shall at all times have a collar about its neck with a metal tag attached thereto, bearing the number of the license. Such tag shall be supplied to the owner with the certificate of the license, and shall be of such form and design as the society empowered to carry out the provisions of this act shall designate, and duplicate tags may be issued only on proof of loss of original and the payment of the sum of fifty cents therefor.

"Sec. 6. Dogs not licensed pursuant to the provisions of this act, shall be seized, and if not redeemed within forty eight hours, may be destroyed or otherwise disposed of at the discretion of the society empowered and authorized to carry out the provisions of this act.

"Sec. 7. All persons claiming a dog seized under the provisions of this act and proving ownership thereof

shall be entitled to resume possession of the animal on payment of the sum of one dollar; provided, however, that such claim shall be made before the expiration of the forty eight hours as provided in section 6.

"Sec. 8. The Ohio Humane Society is hereby empowered and authorized to carry out the provisions of this act, and the city auditor shall issue the licenses and renewals, and to collect the fees therefor, as herein prescribed, and shall pay the proceeds over to said society; provided, however, that said society shall defray the cost of carrying out the provisions of this act, and shall establish and maintain a home or shelter for lost, strayed or abandoned dogs and other animals.

"Sec. 9. Any person or persons who shall hinder or molest or interfere with any officer or agent of said society in the performance of any duty enjoined by this act, or who shall use a license tag on a dog for which it was not issued, shall be deemed guilty of a misdemeanor, and upon conviction thereof before the police court or any justice of the peace shall be fined not more than one hundred dollars.

"Sec. 10. Any person who shall steal a licensed dog or a license tag within the corporate limits of any city of the first grade of the first class, shall be guilty of a misdemeanor, and upon conviction thereof before the police court or any justice of the peace, shall be fined for such offense any sum not exceeding one hundred dollars and cost of prosecution, and in default of payment of such fine shall be committed to prison by such police court or justice of the peace until the same shall be paid; but such imprisonment shall not exceed one hundred and fifty days; provided that all fines collected for violations of this act shall be paid to the Humane Society, to be used in enforcing the provisions of this act, and for the support of a home or shelter for homeless animals.

"Sec. 11. Any justice of the peace or police judge within the city where he has jurisdiction shall have jurisdiction in cases of violations of the provisions of this act. If such prosecution be before a justice of the peace,

and a trial by jury be not waived, the said justice shall issue a venire to any constable of the county, containing the names of sixteen electors of the county to serve as jurors to try such case, and make due return thereof. Each party shall be entitled to two peremptory challenges and shall be subject to the same challenges as jurors are subject to in criminal cases in the court of common pleas. If the venire of sixteen names be exhausted without obtaining the required number to fill the panel, the justice may direct the constable to summon any of the bystanders to act as jurors; provided that in all cases prosecuted under the provisions of this section no costs shall be required to be advanced or paid by the person or persons authorized under the law to prosecute such cases; and provided further that in all cases brought under the provisions of this section, if the defendant be acquitted, or if convicted and committed in default of paying fine and costs, the costs of each case shall be certified under oath to the county auditor, who, after correcting the same, shall issue a warrant on the county treasurer in favor of the persons to whom such costs and fees shall be paid.

"Sec. 12. None of the provisions of this act shall apply to dogs owned by non-residents passing through the city, nor to dogs brought to the city and entered for exhibition at any dog show.

"Sec. 13. All acts and parts of acts, ordinances and parts of ordinances, conflicting with any of the provisions of this fact, shall be and the same are hereby repealed, as to cities of the first grade of the first class.

"Sec. 14. This act shall take effect and be in force from and after its passage. (92 O. L., 760.)"

The answer further says that said act is still in force; that it is the society mentioned in said act; that it has fully carried out the provisions of the same, and has and is proceeding to enforce the provisions of the act.

The answer further alleges that the plaintiff being the owner of a dog and harboring the same within the corpor-

ate limits of the city of Cincinnati, Ohio, has failed and neglected and refused to procure a yearly license and pay the sum of two dollars for such dog and still refuses to do so, and refuses to comply with the provisions of said act in relation thereto, and in violation thereof.

The defendant further alleges that by said act, dogs, not licensed, shall be seized, and if not redeemed within 48 hours, may be destroyed or otherwise disposed of at the discretion of the society empowered and authorized to carry out the provisions of this act. It further alleges that by reason of the violation of said act by said plaintiff in failing to procure a license for said dog, and paying the sum of two dollars therefor, that it will seize, and unless redeemed within 48 hours, will destroy or otherwise dispose of said dog, and says that plaintiff is not entitled to the injunction asked for, and that his said petition should be dismissed.

The plaintiff has also filed an amended petition, in which he avers that in addition to the facts alleged in his original petition, he has listed his said dog for taxation as required by the statutes of Ohio, and that the necessary and proper taxes thereon have been paid by him.

There is no further plea by the defendant, and the plaintiff demurs to the answer of the defendant on the ground that said answer is insufficient in law.

This case was therefore argued and submitted to the court on the demurrer of the plaintiff to the answer of the Ohio Humane Society. The demurrer admitting the allegations of the answer to be true, it is necessary for the court to consider whether they are sufficient in law as a defense. The argument presented on behalf of the plaintiff in support of the demurrer is based upon four grounds.

First, that said act, passed in 1896 is, in violation of section 26, article 2 of the constitution, which prescribes that all laws of a general nature shall have a uniform operation throughout the state.

Second, that said law conflicts with the fifth amendment to the constitution of the United States, and article 1, section 19 of the constitution of Ohio, that property can not be taken without due process of law, and that private property in the state of Ohio is inviolate.

Third, that it is an act conferring corporate powers in violation of article 13, sections 1 and 2 of the constitution of Ohio; and,

Fourth, that it is a tax for a private purpose, and that as the dog was listed for taxation, then the license under section 2833 of the Revised Statutes is a double tax.

The court recognizes the fact that in the consideration of any constitutional question every presumption must be taken in favor of the validity of the statutes; that no court should declare a statute unconstitutional unless its invalidity is clear, and the difficulty lies in determining what constitutes a law of that nature within the meaning of the constitution. The test applied depends upon the character of the subject matter, and if this subject matter is of a general, as distinguished from a local or special nature, existing throughout the state in every county, then the law is one of a general nature requiring a uniform operation throughout the state. The question therefore to be determined is, whether or not this law is of uniform operation throughout the state, for if it exempts a portion of those coming within its terms from benefits or burdens which are not conferred or imposed upon all others belonging to the same class, then it would not have that uniform operation throughout the state which is contemplated by the constitution, and though the law is of uniform operation within one city or two cities of the state, and even though described as a city of the first grade of the first class, nevertheless, if it appears that the act does confer power, corporate or administrative, and that the conditions undertaken to be legislated upon are common to other sections of the state generally, then the constitutional requirement of uniform operation throughout the state is not answered. While

the thing to be acted upon under consideration is a dog, the object of the statute is to protect the people and property from dogs running at large, and for the licensing of dogs and their regulation. This is a matter of general public interest, in which every person within the state of Ohio exposed to such dangers as may result from dogs running at large, is intended to be guarded against, and is equally interested with every other person in their licensing and regulation; and while in cities of the first grade of the first class, by reason of the greater population or the greater number of people congregated there may be harbored or held a larger number of dogs, nevertheless, in the same proportion there can not be any difference between the risks or hazards taken by other people in other cities, villages, and towns throughout the state where dogs are also harbored and held, and the necessity for licensing and regulating them. This is a law of a general nature not adopted alone to cities of the first grade of the first class, and as it lacks the requirement of uniform operation, the court is of the opinion that section 1 of said act is in violation of section 26, article 2 of the constitution. City of Cincinnati v. Steinkmp, trustee, 54 Ohio St., 284; Karb v. State, 54 Ohio St., 383.

The second ground, it seems to the court, presents the most serious question to the statute, and that is that the law is in violation of the 5th amendment to the constitution of the United States, and article 1, section 19 of the constitution of Ohio, by which property can not be taken without due process of law, and that private property in Ohio shall be held inviolate. Without going into any elaborate discussion of the question of property in dogs, suffice it to say that the court is satisfied that dogs are now considered property in this state. Section 2754 provides for the listing and taxation of dogs, and section 7008, R. S., recognizes them as property.

Our own circuit courts also recognize and have held to all intents and purposes that dogs are property. The act in controversy contemplates a con-

fiscation of property without judicial hearing and judgment, and such confiscation without judicial hearing and judgment with due notice is void as not being due process of law. It is an inflexible principle of constitutional right that no person can legally be divested of his property or against his will unless he is allowed a hearing before a tribunal where he may contest the claim set up against him and be allowed to meet it on law and facts. By the words, "Due process of law" must be understood to mean the law of the land. That is, the law of the state of Ohio and of the United States. In other words, that no person shall be deprived by any form of governmental action of either life, liberty or property except as the consequence of some judicial proceeding appropriately and legally conducted. Hey Sing Ieck v. Anderson, 57 Cal., 251; Lowry v. Rainwater, 70 Mo., 152; March v. Poston, 35 W. L B., 331.

It is a well known fact that large amounts of money are now invested in dogs. They are largely the subjects of trade and traffic. In many ways they are put to useful service, and so far as pertains to their ownership as personal property, they possess all the attributes of other personal property. Many people traffic in the breeding and raising of dogs for the purpose of sale, and as a kind of personal property, dogs of various and different breeds have their values the same as any other kind of animal bred and raised by fanciers of that particular kind. There can be no doubt, therefore, that the right of property exists in dogs, and if the right exists, then it follows that dogs will receive protection from the law and from mankind. In holding, therefore, that this law contravenes the constitution holding property inviolate, and therefore unconstitutional, does not deprive the legislature or the city council from passing such regulations or ordinances as they may deem best for the protection of the people as against dogs running at large. It is well settled that a city council or the legislature may regulate, and it would be within the constitutional limitations for such regulation

to have the runnings of dogs at large regulated as by paying license, or by their muzzling, or by such police regulation as the legislature or council may see fit to impose.

Most of the cases cited by the defendant turn upon the police regulations of dogs running at large which have been brought to the attention of the various supreme courts in the cases cited, in which it has been originally held that such regulations could be had; but under the act in this case there is no distinction made between dogs running at large or dogs that may be kept or harbored at home where they interfere with no person. There is no distinction made between vicious and mad dogs or perfectly harmless ones, but all dogs, whether they are at large on the streets, or whether they are within the home of their owner, are to be seized by the defendant society and destroyed or otherwise disposed of.

This question, while not by a court of last resort, has been determined by the supreme court of the state of New York in the case of Fox v. Mohawk and H. R. Humane Society, 48 N. Y. Sup., 625, in which the law is almost identical with the one in question here, and in which the argument of the defendant as raised in that case is similar with the one at bar, and while the lower court sustained the constitutionality of the act, the supreme court, all the judges concurring, held that the act was unconstitutional, and the defendant in that case, as in this case, admitted that unless restrained by the order of the court the society would seize and destroy, or otherwise dispose of the property of plaintiff. The court in that case said:

"That no person had the right to own or harbor a dog except licensed by the defendant. By paying the defendant one dollar, a person would get a license for his dog however mad, vicious or diseased it may be. If he does not choose to pay the dollar, the defendant can confiscate the dog, unless redeemed within 48 hours by paying two dollars. The defendant need not kill the dog it confiscates, but may sell

it, and the defendant can manage its business upon a basis most thrifty to itself, thus placing the public service at the mercy of corporate interests, and requiring an individual to pay a private corporation for a sovereign favor seems to be contrary to the fundamental principles of popular government."

And so far as this act is concerned, the city of Cincinnati stands merely as the collector for the license fees which would be due under the act to the Ohio Humane Society.

There is a fallacy in the defendant's argument that the Ohio Humane Society stands as the practical representative of the police power of the state of Ohio, for the reason that the police power of the state and of a city could not be delegated to any corporation, but must be exercised by individuals, who, as individuals, are capable of taking the oath of office, thereby fixing their responsibility and liability.

Without touching the question of double taxation, or that it is a tax for a private purpose, the court feels satisfied that upon either or both of the two grounds set forth, that the law is unconstitutional, and that the plaintiff is entitled to the relief sought, and a perpetual injunction will be granted. See: Hubbard v. Preston, 15 Lawy. Rep. Ann., 249 and note; Archer v. Baertschi, 8 C. Ct., 12; Cotter v. Dotty, 5 Ohio, 394 ; Brill v. Ohio Humane Society, 4 C. Ct., 358; Mullaty v. State, 86 N. Y., 365; Washington City v. Meigs, 1 Mc. A., 53; Cooley's Const. Lim., 740.

Wright & Wright and Kittredge & Wilby, for Plaintiff.

Goebel & Bettinger, for the Humane Society.