[870 NYS2d 124]

Darlene Feger, Appellant, v Warwick Animal Shelter et al., Respondents, et al., Defendant.

Second Department, December 23, 2008

## APPEARANCES OF COUNSEL

*Douglas R. Dollinger*, Newburgh, for appellant.

*Paul I. Marx*, White Plains, for respondents.

## OPINION OF THE COURT

LEVENTHAL, J.

The defendants Warwick Animal Shelter and Thomas Loughlan (hereinafter the defendants) moved, inter alia, for a protective order to prevent disclosure of the identities of the donor and adoptive owner of a cat sought by the plaintiff. The issue raised on this appeal is whether the Supreme Court properly exercised its discretion in granting that branch of the defendants' motion.

The plaintiff alleges that her cat "Kisses," a valuable purebred white Persian, was taken from her home in August of 2002 by an undisclosed individual. She claims that 10 days after the cat was stolen, she discovered a picture on the Warwick Animal Shelter's Web site of a cat named "Lucy," which she alleges was her cat "Kisses." The plaintiff contacted the shelter the following day and was informed that "Lucy" had already been offered for adoption. Pursuant to its privacy policy, the shelter refused to divulge the identity of the donor or the adoptive owner. The shelter claims that "Lucy" was not the same cat as "Kisses" and had been brought to the shelter by an individual who could no longer keep a cat because of difficulties with a landlord. In an attempt to accommodate the plaintiff, the shelter had the adoptive owner provide it with a photo of "Lucy" and had the cat examined by a veterinarian. The defendants contend that "Lucy" was found not to have several of the defining physical characteristics listed by the plaintiff in a description of "Kisses."

The plaintiff commenced this action against the shelter and one of its employees. The complaint alleged seven causes of action that, inter alia, sought damages in the sum of $86,000 (a total representing the value of the cat and lost litters) and the return of the cat. The plaintiff claims that the shelter was negligent and violated local and federal laws by spaying the cat and allowing the cat to be adopted. The plaintiff alleged that

the cat was taken and brought to the shelter by an employee of the shelter, by an employee of a service provider of the shelter, or by an employee of a Warwick, New York law firm who received it from an employee at an affiliated law firm located near the plaintiff's home in New Jersey. The defendants took the position that no laws were broken, that "Lucy" was not "Kisses," and that the plaintiff was not entitled to the identity of the donor or the party that adopted the cat.

The defendants moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint insofar as asserted against them and for a protective order against the plaintiff's discovery demand which sought the identities of the donor and adoptive owner. The plaintiff cross-moved for summary judgment. In an order dated March 2, 2005, the Supreme Court denied the plaintiff's cross motion and granted that branch of the defendants' motion which was pursuant to CPLR 3211 (a) (7) to dismiss the complaint insofar as asserted against them. The Supreme Court did not rule on that branch of the motion which was for the protective order, as the issue was academic.

The plaintiff appealed and this Court reinstated some of the causes of action (see *Feger v Warwick Animal Shelter*, 29 AD3d 515 [2006]). Thereafter, in the order appealed from, the Supreme Court granted that branch of the defendants' motion which was for a protective order to prevent disclosure of the identities of the donor and adoptive owner of the cat. We modify.

While CPLR 3101 (a) requires "full disclosure of all matter material and necessary in the prosecution or defense of an action," CPLR 3103 (a) authorizes the court to "make a protective order denying, limiting, conditioning or regulating the use of any disclosure device." In making this determination as to whether disclosure is warranted, the court employs a test of "usefulness and reason" (*Scalone v Phelps Mem. Hosp. Ctr.*, 184 AD2d 65, 70 [1992]), balancing the importance to the plaintiff's claim of the information sought versus the consequences of disclosure. The trial court possesses broad discretion to deny demands that are unduly burdensome or that seek irrelevant or improper information (see *Scalone v Phelps Mem. Hosp. Ctr.*, 184 AD2d at 70). It is well established that the " 'supervision of disclosure and the setting of reasonable terms and conditions therefor rests within the sound discretion of the trial court and, absent an improvident exercise of that discretion, its determination will not be disturbed' " (*Gilman & Ciocia, Inc. v Walsh*, 45 AD3d 531 [2007], quoting *Mattocks v White Motor Corp.*, 258 AD2d 628, 629 [1999]).

■ Here, the Supreme Court providently exercised its discretion in granting a protective order as to the identity of the adoptive owner. The record fails to demonstrate that the identity of the adoptive owner was material and necessary to the plaintiff's claim. Additionally, public policy considerations support the determination to deny disclosure under these circumstances.

The trial court held that "as a matter of public policy the names of adoptive pet owners should be kept confidential in order to foster the adoption process." We agree that allowing for disclosure could lead to the collapse of what the Supreme Court called the "animal adoption infrastructure." It is evident that if the identity of adoptive pet owners were subject to discovery under the circumstances here, it is likely that others would be less inclined to adopt because of concerns that they could be subjected to harassment or intimidation by prior putative owners. Absent an adoption alternative, animals undoubtedly will be destroyed. The protection of the identities of the adoptive pet owners involved in the animal adoption process promotes the placement of animals in homes and prevents the needless euthanizing of otherwise healthy animals. Other states have made determinations to deny disclosure on similar policy grounds (*see generally Johnston v Atlanta Humane Socy.*, 173 Ga App 416, 326 SE2d 585 [1985]; *Lamare v North Country Animal League*, 170 Vt 115, 743 A2d 598 [1999]).

Companion animals are a special category of property and are afforded many protections under the law (*see generally Morgan v Kroupa*, 167 Vt 99, 702 A2d 630 [1997] [where the court recognized the unique status of domestic pets in declining to apply the available lost property statutes]; *Bueckner v Hamel*, 886 SW 2d 368, 377 [Tex 1994, Andell, J., concurring]). This State has a longstanding history of protecting animals. In recent years these laws have been expanded and strengthened. In 1866, New York was the first state to charter the American Society for the Prevention of Cruelty to Animals. In 1867, New York passed a law outlining what constituted animal cruelty and provided for penalties for those violating the law. This law, inter alia, prevented overdriving and overloading animals, dog fighting, cock fighting, impounding animals without providing sufficient food and water, and abandoning animals (L 1867, ch 375). The current cruelty laws in New York follow a similar framework but go further. For example, the current laws now include prohibitions on leaving certain animals outdoors without proper shelter and clipping or cutting the ears of dogs without anesthe-

sia, and provide minimum standards of care that pet dealers must provide animals in their custody (*see* Agriculture and Markets Law §§ 353-b, 356, 365, 400-407).

Additionally, under Not-For-Profit Corporation Law § 1403, the establishment of societies for the prevention of cruelty to children is contained in the same subdivision as the creation of societies for the prevention of cruelty to animals. The Legislature certainly does not equate children with animals. Yet the Legislature's formatting of this statute in such a manner demonstrates society's distaste for cruelty to animals (*see* N-PCL 1403).

The reach of our laws has been extended to animals in areas which were once reserved only for people. For example, the law now recognizes the creation of trusts for the care of designated domestic or pet animals upon the death or incapacitation of their owner (*see* EPTL 7-8.1). Companion animals may now be included as protected parties when orders of protection are issued in domestic disputes (*see* Family Ct Act § 842). Furthermore, the courts have recognized the "cherished status" accorded to pets in our society in awarding possession of a cat in a custody dispute based in large part on what was in the best interest of the animal (*Raymond v Lachmann*, 264 AD2d 340, 341 [1999]).

These laws indicate that companion animals are treated differently from other forms of property. Recognizing companion animals as a special category of property is consistent with the laws of the State and the underlying policy inherent in these laws to protect the welfare of animals. It would be contrary to this principle to cause the needless euthanasia of animals by discouraging animal adoptions, which would likely be the case if a protective order were to be denied in similar circumstances.

■ As to the identity of the donor of the cat, since the plaintiff alleges the shelter was aware that the cat was wrongfully taken from its owner, a reasonable resolution would be to allow the plaintiff to ascertain if the donor was, as alleged, an employee of the shelter, an employee of a service provider of the shelter, or an individual employed by the law firm of Stage, Nathans & Ziobro in Warwick, New York. If the donor was such an individual as alleged, then his or her identity should be disclosed. If the donor was not associated with the shelter or the law firm, disclosure of the identity of the donor would not be warranted.

Therefore, the order is modified, on the facts and in the exercise of discretion, by deleting the provision thereof granting

that branch of the motion of the defendants Warwick Animal Shelter and Thomas Loughlan which was for a protective order to prevent disclosure of the identity of the donor of the cat and substituting therefor a provision granting that branch of the motion only if the donor was not an employee of the defendant Warwick Animal Shelter, an employee of a service provider of Warwick Animal Shelter, or an individual employed by the law firm of Stage, Nathans & Ziobro in Warwick, New York, and otherwise denying that branch of the motion; as so modified, the order is affirmed.

SPOLZINO, J. (concurring in part and dissenting in part). Like my colleagues in the majority, I salute, on the basis of personal experience, the value and importance of pets in our lives. As I see it, however, this appeal is not, as the majority suggests, about protecting a pet's adoptive owner from a meddling plaintiff who seeks maliciously to interfere with that relationship. Rather, assuming the allegations in the complaint to be true, the claim here is by a plaintiff who wants to be reunited with her stolen cat.

These circumstances, in my view, present no occasion to recognize new disclosure protections in favor of those who adopt pets at the expense of pet owners who may have lost them. Instead, our role here is to employ the rules normally applicable to disclosure pursuant to CPLR article 31 to facilitate the resolution of the factual issues upon which this dispute will turn. On that basis, I concur that the protective order was properly issued with respect to the plaintiff's demand for the identity of the adoptive owner, named in the complaint as "the Jones Family." I do not agree, however, that the identity of the individual who initially brought the cat to the shelter, "Jane Roe," is immaterial or should be protected as a matter of public policy. I therefore dissent in that regard, respectfully.

The overarching principle that governs disclosure in New York civil actions is the requirement of "full disclosure of all matter material and necessary in the prosecution or defense of an action" (CPLR 3101 [a]). It is now axiomatic that the words " 'material and necessary' " are "to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" (*Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 [1968]).

Here, the plaintiff claims that the defendant Warwick Animal Shelter knowingly accepted a stolen cat for adoption, as we

recognized when we reinstated some of the causes of action in the complaint (*see Feger v Warwick Animal Shelter*, 29 AD3d 515, 516 [2006]). I agree that in the absence of an argument that the identity of the adoptive owner must be known in order to enforce a judgment, which is not made here, it is difficult to comprehend how the identity of that owner is material and necessary to the prosecution of the plaintiff's claim. The complaint does not allege any wrongdoing on the part of the adoptive owner. To the extent that the identity of the cat remains at issue, the record discloses that the adoptive owner has cooperated with the investigation into the identity of the cat, and that further examination of the animal, if necessary, can be conducted without revealing the identity of the adoptive owner. The plaintiff has, in fact, conceded in her reply papers that, as an alternative remedy, the court could fashion an order that would provide the plaintiff with needed discovery without disclosing the identity of the adoptive owner. I therefore agree that the shelter defendants have demonstrated that the identity of the adoptive owner is not material and necessary to the plaintiff's case and that the order of the Supreme Court should be affirmed insofar as it granted their request for a protective order in that regard (*see Beckles v Kingsbrook Jewish Med. Ctr.*, 36 AD3d 733 [2007]; *Smith v Moore*, 31 AD3d 628 [2006]).

The circumstances by which the cat came to the shelter are, by contrast, highly relevant to resolution of the dispute. The complaint alleges that "Jane Roe" wrongfully took the cat from New Jersey and illegally transported it to the shelter in New York. The complaint further alleges that the shelter defendants knew or should have known of the wrongful taking because, among other things, Jane Roe was "an employee of an agent, servant or service provider associated or otherwise employed by" the shelter. Since these claims turn on who Jane Roe is and what she did or did not do, the identity of Jane Roe clearly falls within the discoverable class of "facts bearing on the controversy which will assist preparation for trial" (*Allen v Crowell-Collier Publ. Co.*, 21 NY2d at 406). In my view, therefore, absent a privilege, the Supreme Court should have denied that branch of the motion which was for a protective order in this regard (*see U.S. Ice Cream Corp. v Carvel Corp.*, 190 AD2d 788, 788-789 [1993]).

Protection against disclosure is the exception, not the rule (*see O'Neill v Oakgrove Constr.*, 71 NY2d 521, 532 [1988, Bellacosa, J., concurring]). Although "discovery determinations are discretionary" and "each request must be evaluated on a case-

by-case basis with due regard for the strong policy supporting open disclosure" (*Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740, 747 [2000]), the party who seeks a protective order bears the burden of showing that a privilege applies or that discovery is otherwise improper (*see Koump v Smith*, 25 NY2d 287, 294 [1969]; *Bombard v Amica Mut. Ins. Co.*, 11 AD3d 647, 648 [2004]; *Sage Realty Corp. v Proskauer Rose*, 251 AD2d 35, 40 [1998]). Here, the shelter defendants have failed, in my view, to carry that burden.

I am not convinced, to begin with, of the factual underpinning of the majority's argument—that an individual who finds a stray or abandoned animal will be less likely to surrender it at a shelter which can arrange for an adoption simply because his or her identity may become known. Neither do the authorities from other jurisdictions that have been cited by the majority establish such a public policy. In those cases, the plaintiffs sought only to learn the identities of the adoptive owners for the purpose of obtaining the return of their animals (*see Lamare v North Country Animal League*, 170 Vt 115, 743 A2d 598 [1999]; *Johnston v Atlanta Humane Socy.*, 173 Ga App 416, 326 SE2d 585 [1985]), not the identity of the person surrendering the animal.

Even if the public policy upon which my colleagues in the majority predicate their determination were properly recognized, it would not apply here, where the plaintiff has alleged that Jane Roe unlawfully took her pet. While a pet owner's interest is subject to the police power of the state where necessary to protect the public from stray animals, the law also protects the owner's possessory interest in an animal from "loss by conversion in a situation where the police power is not involved" (*Johnston v Atlanta Humane Socy.*, 173 Ga App at 417, 326 SE2d at 587). The "[p]ublic interest encompasses not only the needs of the government, but also the societal interests in redressing private wrongs and arriving at a just result in private litigation" (*Cirale v 80 Pine St. Corp.*, 35 NY2d 113, 118 [1974]). Where, as here, an unlawful taking is alleged, the interest directly implicated is that of the owner in obtaining the return of the missing animal. Since the interest of the public in arranging the adoption of strays is necessarily secondary, a discovery protection intended to benefit that interest at the expense of the pet's owner is, in my view, inappropriate.

Accordingly, I would allow the plaintiff to discover the identity of Jane Roe and I, therefore, respectfully dissent to the extent

that the majority affirms the protective order with respect to Jane Roe.

MASTRO, J.P., and BALKIN, J., concur with LEVENTHAL, J.; SPOLZINO, J., concurs in part and dissents in part, and votes to modify the order appealed from by denying that branch of the defendants' motion which was to prevent disclosure of the identify of the donor of the cat, and otherwise affirming the order in a separate opinion.

Ordered that the order is modified, on the facts and in the exercise of discretion, by deleting the provision thereof granting that branch of the motion of the defendants Warwick Animal Shelter and Thomas Loughlan which was for a protective order as to the identity of the donor of the cat and substituting therefor a provision granting that branch of the motion only if the donor was not an employee of the defendant Warwick Animal Shelter, an employee of a service provider of Warwick Animal Shelter, or an individual employed by the law firm of Stage, Nathans & Ziobro in Warwick, New York; as so modified, the order is affirmed, without costs or disbursements.