OPINION OF THE COURT
Michael C. Lynch, J.
Plaintiff commenced this action seeking to recover possession of a black Labrador retriever named “Earthsea, the Duke of Dunnsville” or “Duke” for short. The parties were involved in a non-marital relationship for over 15 years and lived together at 290 Settles Hill Road, Altamont, New York, between February 6, 2009 and March 22, 2013, when defendant moved out. In September 2009, “Duke” was purchased. While there is a dispute as to which party purchased the dog, Duke’s title and registration was placed in their joint names.
On July 23, 2013, the defendant signed an acknowledged statement that reads as follows:
“I, William Allan, Jr., waive any and all claims I might have against Alisha Hennet.
“I, William Allan, Jr., waive any and all rights and titles to the property located at 290 Settles Hill Rd. Altamont, NY 12009 along with any and all materials and possessions located therein.
“As of today, July 23, 2013, I William Allan, Jr., *544 have removed all personal property from above said property and forever relinquish rights and claims [to] anything left behind. All personal property remaining at above said residence is therefore sole and exclusive property of Alisha Hennet.
“I certify that the above statements are true and complete.”
The statement was signed in conjunction with a refinancing of the mortgage on the Settles Hill property, with defendant quitclaiming his title interest in the property to plaintiff. Plaintiff continues to own and reside in the Settles Hill property while defendant has acquired a separate residence. In his answer, defendant admits that Duke resided at the Settles Hill residence on July 23, 2013. On August 1, 2013, defendant took possession of Duke and has maintained possession ever since, notwithstanding plaintiffs demands that he return Duke to her. This replevin action ensued.
By notice of motion returnable December 9, 2013, plaintiff seeks an award of summary judgment and an order pursuant to CPLR 7102 directing the sheriff to seize and return Duke to her. Defendant has opposed the request, insists that Duke is his dog, and seeks an accounting as to the personal property distributed between the parties.
To begin, the court agrees with plaintiff that the only issue before the court is a determination of the parties’ respective claims to Duke. Defendant has not asserted any counterclaims for an accounting and thus the distribution of their other personal property under the July 23, 2013 release agreement need not be addressed.
Essentially, plaintiff maintains that since defendant has admitted Duke resided at the Settles Hill residence on July 23, 2013, he released any claim to Duke under the terms of the release agreement. In opposition, defendant maintains he only signed the release as part of the refinancing closing. He explains as follows:
“At closing, I was expressly advised that the Release Agreement had nothing to do with my personal property and was required in order to transfer my interest in the real property only. Plaintiff, with the intent to deceive me, misrepresented the terms of the Release Agreement and engaged in fraudulent conduct with regard to the Release Agreement” (see Allan aff ¶ 19).
*545 Defendant maintains he never intended to release any interest in Duke and that his signing the release was a mistake. For her part, plaintiff denies making any misrepresentations as to the terms of the release and asserts that she observed defendant read and sign the release at closing.
Notably, in his opposition papers defendant seeks leave to serve an amended answer to include a third affirmative defense to void the release as “based upon fraudulent inducement, misrepresentation and mistake” (see proposed amended answer attached to defendant’s mem of law). Given that the proposed amended answer comports with defendant’s December 26, 2013 opposition affidavit, and in the interest of fully addressing this dispute on the merits, the court will consider the third affirmative defense in response to plaintiffs motion (see CPLR 3025).
“Under long accepted principles one who signs a document is, absent fraud or other wrongful act of the other contracting party, bound by its contents” (Da Silva v Musso, 53 NY2d 543, 550 [1981] [citations omitted]). The subject release may not be set aside absent a showing of duress, illegality, fraud or mutual mistake (see Mangini v McClurg, 24 NY2d 556, 563 [1969]; Touloumis v Chalem, 156 AD2d 230, 231-232 [1989]). With respect to defendant’s contention that plaintiff fraudulently induced him into signing the release as limited to his interest in the real estate, the express terms of the release document clearly contradict such a limitation. The release expressly waives any interest in “all materials and possessions located therein,” i.e., the residence; specifies that defendant has “removed all personal property”; and states all remaining personal property remains the “sole and exclusive property” of plaintiff. Since defendant acknowledges reading the release, these express terms negate any claim of a plausible reliance on plaintiffs purported misrepresentation (see Key Equip. Fin. v South Shore Imaging, Inc., 69 AD3d 805, 808 [2010]; Dutcher v Shaver, 40 AD3d 1192 [2007]; Bango v Naughton, 184 AD2d 961, 963 [1992]). As such, the release stands.
The further question is whether the reference to personal property in the release extends to Duke.
Traditionally, dogs have been defined as “personal property” under New York law (see General Construction Law § 39; Mullaly v People, 86 NY 365 [1881]; Fowler v Town of Ticonderoga, 131 AD2d 919 [1987]). Correspondingly, replevin has been utilized to recover possession of dogs in non-matrimonial actions (see LeConte v Lee, 35 Misc 3d 286 [2011]; JKG v SG, 31 *546 Misc 3d 639 [2011]; Webb v Papaspiridakos, 23 Misc 3d 1136[A], 2009 NY Slip Op 51152[U] [2009]).
There has been a more recent trend, however, to treat companion dogs as more than just property. In a thoughtful and careful analysis of the prevailing case law, Judge Cooper in Travis v Murray (42 Misc 3d 447 [2013]) concluded that a strict property analysis should not be used to resolve a dispute between divorcing spouses over possession of their dachshund (id.). Instead, relying upon the First Department’s recognition of “the cherished status accorded to pets in our society” in Raymond v Lachmann (264 AD2d 340, 341 [1999]), Judge Cooper opted to apply a “best for all concerned” standard, rejecting the application of a “best interests” custody standard as unworkable.
One of the first cases departing from a traditional property analysis was a 1979 decision, Corso v Crawford Dog & Cat Hosp. (97 Misc 2d 530 [1979]). Corso involved a pet owner’s claim against a veterinarian who wrongfully disposed of the remains of the plaintiffs poodle. In finding that the plaintiff was entitled to more than just market value damages, the court held that “a pet is not just a thing but occupies a special place somewhere in between a person and a piece of personal property” (id. at 531).
This court recognizes that in 1987, the Third Department rejected the Corso analysis in Fowler v Town of Ticonderoga (131 AD2d at 921). As in Corso, Fowler involved a pet owner’s liability claim against a third party. Fowler’s claim was against the Town’s Dog Control Officer for shooting the plaintiffs dog. The Appellate Division rejected plaintiff’s claims for psychic trauma finding “a dog is personal property” (id.).
On the other hand, in a 2008 case brought by a cat owner against an animal shelter to recover her allegedly stolen cat, the Second Department observed that “[c]ompanion animals are a special category of property and are afforded many protections under the law” (Feger v Warwick Animal Shelter, 59 AD3d 68, 71 [2008]).
While this court is certainly bound by Third Department precedent (see Mountain View Coach Lines v Storms, 102 AD2d 663 [1984]), a viable distinction exists between the Fowler third-party liability analysis and the resolution of a dispute between owners of a dog. Courts are essentially at a crossroads in determining whether a strict property analysis should still govern disputes between dog owners. This dilemma is not unlike that facing the Court of Appeals more than a century ago in *547 Mullaly v People (86 NY 365 [1881], supra). The defendant in Mullaly argued that he could not be convicted for stealing a dog. Remarkably, “[a]t common law the crime of larceny could not be committed by feloniously taking and carrying away a dog” (id. at 366). The rationale “for this rule as to stealing dogs [was] the baseness of their nature and the fact that they were kept for the mere whim and pleasure of their owners” (id. at 366-367). The Court of Appeals readily rejected the common-law standard giving due recognition to the often heroic attributes of dogs and their close connection to people. In so holding, the Court observed that “[t]he artificial reasoning upon which these rules were based are wholly inapplicable to modern society” (id. at 367). In this manner, the law in New York first recognized that dogs were “personal property.”
Today, we should take the next step in recognizing that pets are more than just “personal property” when it comes to resolving a dispute between owners. In such disputes, to adopt the characterization of the Second Department in Feger, pets should be recognized as a “special category of property.” It follows that the reference to “personal property” in the subject release does not extend to Duke. Certainly, the attachment each party professes to have with Duke would only be consistent with recognizing that Duke falls within a “special category of property” that is simply not covered by the release.
We are thus left with a dispute between two people as to which party should retain possession of Duke. There is a discrepancy in the submissions as to who actually purchased Duke. While plaintiff relies upon two separate checks from her checking account to establish payment, that same account shows the source of funds primarily came from defendant’s employment. There is also a discrepancy as to how Duke was actually purchased, with plaintiff claiming she personally selected Duke from the litter and defendant producing the affidavit of the breeder contending only defendant was involved in the transaction. The parties acknowledge that their names were jointly placed on Duke’s title and registration. While defendant’s answer admits that Duke was residing at the Settles Hill residence on July 23, 2013, in his opposing affidavit he explains that he arranged for Duke to visit with plaintiff (see Allan aff ¶ 21).
Given this factual dispute, as in Travis, the court finds that a hearing should be held to determine which party should be awarded sole possession of Duke. As reflected in the extensive submissions on the pending motions, including plaintiffs 23- *548 page “Reply Memorandum of Law,” the dispute places a significant strain on the parties and the judicial system that warrants a final resolution now, without the prospect of ongoing litigation involving compliance with a shared possession arrangement. Since both parties profess a strong relationship with Duke and extensive involvement in his care, in essence the court is left with endeavoring to render a fair determination as to which party through his or her conduct has the most genuine right of possession. This inquiry necessitates a review of the circumstances as to how Duke was acquired and cared for, and the actual arrangement between the parties for spending time with Duke after defendant left the Settles Hill Road residence.
Accordingly, the parties’ respective motions for summary judgment are denied, except to the extent the parties are directed to attend a conference on March 5, 2014 at 10:00 a.m. for purposes of scheduling a hearing for the reasons set forth above. Defendant’s cross motion to amend his answer is granted, all without costs.